**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Roanoke Division)**

| | |
|---|---|
| **JOSEPH DOE,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 7:18-cv-523**<br>**Judge Elizabeth K. Dillon** |
| **VIRGINIA POLYTECHNIC**<br>**INSTITUTE AND STATE**<br>**UNIVERSITY, et al.,** | |
| **Defendants.** | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS'
## JOINT MOTIONS TO DISMISS THE COMPLAINT

## INTRODUCTION

Defendants move to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(6) and 12(b)(1). The Motions should be denied. Plaintiff states claims for relief under Title IX of the Education Amendments of 1972, the Fourteenth Amendment and state law that are more than plausible. The Complaint details specific instances of intentional sex discrimination against Plaintiff as a male student resulting in an erroneous outcome from a flawed proceeding and a severe and unjust penalty imposed on Plaintiff. Further, Defendants' statute of limitations defense fails as Plaintiff timely commenced this action in accordance with applicable case law; alternatively, even if the action were required to be filed within the time frame asserted by Defendants, the harm caused to Plaintiff by Defendants' actions constitutes a continuing violation, which makes the accrual date later than the time asserted by

1

Defendants. Finally, due to Defendants policies and actions, the statute of limitations is subject to equitable tolling.[1]

## STATEMENT OF FACTS

Plaintiff was enrolled as an undergraduate student at Virginia Polytechnic Institute and State University ("Virginia Tech") from fall 2015 until the spring of 2017. Compl. ¶ 10. June Roe ("Roe") falsely accused Plaintiff of rape and sexual assault on or around February 11, 2017. *Id.* ¶ 11. She claimed that the alleged rape and sexual assault occurred during a Snow Club ski trip in West Virginia. *Id.* ¶¶ 11, 35. Plaintiff and Roe shared the same bedroom along with several other friends in a rented house during the trip. *Id.* ¶¶ 15-16.  They returned to their room along with two friends after a day of skiing and drinking. *Id.* ¶¶ 17-18. Plaintiff and one of the friends helped Roe remove her snow gear and she went to sleep. *Id.* ¶ 20. The two friends then departed. *Id.* ¶ 21.

Approximately twenty minutes later Roe woke up and asked Plaintiff to fix her some food. *Id.* ¶ 22. He did so and then sat on the bed next to her while he ate as the other bed in the room was occupied with a sleeping couple and there was no other place to sit in the room. *Id.* ¶¶ 22-24. Roe initiated physical contact with Plaintiff and began kissing him. *Id.* ¶ 25. Then she requested that Plaintiff cuddle her and when he acquiesced, she took his hand and placed it down her pants and on her genitals. *Id.* ¶¶ 26-27. Plaintiff digitally penetrated her at her request and encouragement. *Id.* ¶ 27. She then asked Plaintiff to have vaginal intercourse with her and he refused. *Id.* ¶ 28. The people in the other bed had no recollection of an assault or disturbance on the evening of February 11, 2017.

---

[1] Plaintiff does not dispute that Counts IV and V are barred by the Eleventh Amendment. To avoid concurrent cases in two courts, Plaintiff requests that Defendants consent to the state claims being heard in the present matter. Plaintiff also concedes that he did not provide the requisite notice for his negligence and breach of contract causes of action. While the statute has run on the negligence cause of action, it has not run on the breach of contract. *See* Va. Code § 8.01-195.6 (notice to be provided within one year); Va. Code § 8.01-246 (written contracts subject to five-year statute of limitations; unwritten, express or implied, contracts subject to three-year statute of limitations). Plaintiff can (and will) properly provide notice pursuant to Va. Code § 2.2-814 to the President of Virginia Tech within either statutory period. Thus, should the Court decide to dismiss this claim, it should be without prejudice so that Plaintiff can bring this claim in state court.

*Id.* ¶ 29. The two friends returned to the room and then all four individuals left separately to attend different parties. *Id.* ¶ 30. Plaintiff did not see Roe again that night, nor did he see her the next morning. *Id.* ¶¶ 30-31.

On March 14, 2017, Doe was informed by defendant Katie Reardon Polidoro ("Polidoro"), Title IX Investigator & Gender-Based Violence Prevention Specialist, that an incident had come to Title IX's attention and that he was allegedly involved. Compl. ¶ 32. There were no specifics about the date or location of the incident or the policies involved. *Id.* There was an approximately one-month investigation, which culminated with a hearing on May 15, 2017. *Id.* ¶¶ 33-34, 36-37. During the hearing Plaintiff tried to present evidence and address discrepancies in the record, including the fact that Roe had no memory of the incident, and statements of adverse witnesses. *Id.* ¶¶ 41-42. His efforts were wholly disregarded. Doe was only allowed to ask Polidoro questions through hearing officers Ennis McCrery ("McCrery") and Aaron Reistad ("Reistad"), who would then rephrase the question. *Id.* ¶¶ 39, 42. Only clarifying questions could be asked, not ones that would prove a point or point out a discrepancy. *Id.* Polidoro acknowledged that she did not get a statement from Witness No. 3, one of Doe's witness. *Id.* ¶ 40. Plaintiff also had to ask questions of Roe in the same manner as he did Polidoro, through McCrery and Reistad. *Id.* ¶¶ 41-42.

On May 16, 2017, Plaintiff was informed that he had been found responsible for violating the alcoholic beverage policy, the Sexual Violence-Sexual Assault, and the Sexual Violence-Rape policy. Id. ¶¶ 46-47. Doe appealed the finding of responsibility, pursuant to the appeal procedure outlined in the Hokie Handbook which states that "[s]anctions do not typically take effect until the Appellate Officer decision is final." *Id.* ¶ 51, Hokie Handbook P. 13, attached as Ex. A. The appeal was denied by Frances B. Keene on June 14, 2017 stating that "[t]his…[was] the final University decision in this case." *Id.* ¶ 51; appeal letter attached as Ex. B. Subsequently, Virginia Tech suspended Plaintiff from

Virginia Tech until Spring 2019. He filed his complaint on October 23, 2018, well within two years of the appeal decision as well as the initial finding. Docket ("Dkt") 1.[2]

## STANDARD OF REVIEW

This Court in *Keith v. Commonwealth of Virginia Dep't of Corrections* articulated the differing standards applied to motions to dismiss brought under Rule 12(b)(1) and 12(b)(6) as follows:

> The court must initially determine whether the motion is a facial or factual challenge, as there are two distinct ways to present a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), each of which trigger different standards of review. *See Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). First, if the Rule 12(b)(1) motion is a facial challenge attacking subject-matter jurisdiction by asserting that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based[,]" then "the facts alleged in the complaint are assumed to be true and the plaintiff … is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams,* 697 F.2d at 1219. Second, if the 12(b)(1) motion is a factual challenge, refuting the alleged jurisdictional basis of a complaint by asserting that, although facially adequate, the allegations are factually untrue, the district court may then consider extrinsic information beyond the complaint to determine whether subject-matter jurisdiction exists. *See Thigpen v. United States,* 800 F.2d 393, 402 n. 15 (4th Cir.1986) (citing *Adams,* 697 F.2d at 1219). A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In considering such a motion, the court should accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff. *See, e.g., De Sole v. United States,* 947 F.2d 1169, 1171 (4th Cir.1991) (citing *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969)).

*Keith v. Commonwealth of Virginia Dep't of Corr.,* No. 1:10-CV-00003, 2010 WL 2555110, at *1 (W.D. Va. June 22, 2010), *report and recommendation adopted sub nom. Keith v. Virginia Dep't of Corr.,* No. 1:10CV00003, 2010 WL 2803421 (W.D. Va. July 14, 2010).

When addressing a Rule 12(b)(6) motion, the court "is not engaged in an effort to determine the true facts. The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim. For that reason, the court, in judging the sufficiency of the complaint, must

---

[2] Va. Code § 23.1-900 requires the registrar of any public institution of higher education to include a prominent notation on the academic transcript of any student who has been suspended or permanently dismissed for, or while under investigation of, an offense involving sexual violence. This law was enacted in 2015 and renumbered in 2016. For reasons unknown at this time, Virginia Tech amended all transcripts in the summer of 2018, marking Plaintiff's transcript in accordance with this statute. This was not included in Plaintiff's Complaint because it occurred after it was filed. Plaintiff anticipates amending his Complaint regarding this statute.

accept the facts alleged and construe ambiguities in the light most favorable to upholding the plaintiff's claims." *Doe v. Columbia*, 831 F.3d 46, 48. Thus, at this juncture, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The relevant question for a district court is whether "the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n. 14 (2007). Accepting all factual allegations in the Complaint as true, Plaintiff has pleaded facts sufficient to establish plausible claims for relief.

## **ARGUMENT**

### I. **Defendants' Statute of Limitations Arguments are Inappropriate for a 12(b)(6) Motion.**

In the Fourth Circuit, all facts necessary to determine the affirmative defense of a statute of limitations violation must be pled in the complaint for the Court to consider the merits of that affirmative defense in a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6).[3] Here, not all facts necessary to determine the statute of limitations are present in the complaint to properly determine the applicable statute of limitations or the accrual date for the statute of limitations. Indeed, whether the violations were "clearly known" and whether there was a continuing

---

[3] *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) ("Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, see Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant. See *Newell v. Richards*, 323 Md. 717, 594 A.2d 1152, 1156 (1991); accord *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 427 F.2d 862, 870 (4th Cir. 1970). It follows, therefore, that a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred.  But in the **relatively rare circumstances** where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).  **This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[ ] on the face of the complaint**." *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)(emphasis added); accord *Desser v. Woods*, 266 Md. 696, 296 A.2d 586, 591 (1972)." (emphasis added)).

violation are questions of law that turn on facts that should be subject to discovery. Consequently, all Defendants' arguments related to statute of limitations violations should be denied at this stage.

## II.   Plaintiff filed his Title IX claims within the applicable statute of limitations.

Should the Court determine that this is a "rare circumstance" in which all facts "clearly appear" on the face of the Complaint to reach a determination on the merits of a statute of limitations defense, Defendants' motions still fail. Defendants argue that the statute of limitations (a) accrues on the date of the first notice from Virginia Tech finding Plaintiff responsible and (b) is either three hundred days or two years. Under well-settled Fourth Circuit and United States law, the applicable statute of limitations is two years. There is no well-settled law, however, regarding the accrual date. Under the facts alleged in the Complaint, the accrual date is the date that the appeal was denied. In any event, Plaintiffs' claims are subject to equitable tolling.

### A.  The Length of the Applicable Statute of Limitations is Two Years.

The length of the statute of limitations is unquestionably two years. "Section 1983 does not contain a statute of limitations. Thus, to determine the timely filing of a § 1983 claim, courts borrow the statute of limitations from the most analogous state-law cause of action. See 42 U.S.C. § 1988(a). "For § 1983 suits, that cause of action is a personal-injury suit. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989)." *Owens v. Balt. City State's Atty.* Office, 767 F.3d 379, 388 (4th Cir. 2014); *see also*, *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995). Likewise, "every other circuit to have considered the matter in a published opinion has concluded that Title IX is subject to the same limitations period as § 1983." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015); *see e.g.*, *Varnell v. Dora Consol. Dist.*, 756 F.3d 1208, 1212-13 (10th Cir. 2014); *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 (8th Cir. 1995); *Curto v. Edmundson*, 392 F.3d 502, 503-04 (2d Cir. 2004); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 77-78 (3d Cir.1989); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir.1996);

*M.H.D. v. Westminster Schs.*, 172 F.3d 797, 803 (11th Cir. 1999)). The Fourth Circuit agreed in an unpublished case. *Wilmink v. Kanawha Cty. Bd. of Educ.*, 214 F. App'x 294, n. 3 (4th Cir. 2007) ("every circuit to consider this issue has held Title IX also **borrows the relevant state's statute of limitations for personal injury**" (internal citations omitted; emphasis added).  In Virginia, personal injury claims have a two-year statute of limitations. *See* Va. Code § 8.01.01-243 ("Unless otherwise provided in this section or by other statute, every action for personal injuries…shall be brought within two years after the cause of action accrues").

Defendants argue that the length of the statute can change if there is a more analogous state law (which they argue should be the Virginia Human Rights Act ("VHRA")). As the case law shows above, the statute of limitations borrows from state law and is subject to the personal injury statute of limitations of that state. It is the *accrual* date of the statute of limitations, governed by federal law, that is subject to change depending on the facts alleged.

In addition to being inconsistent with the holding of every judicial circuit to have addressed the issue, the argument that VHRA controls is also unpersuasive. "[I]n contrast to the breadth of Title IX, the VHRA "creates a limited private cause of action." *Cross v. Suffolk City School Bd.*, 2011 U.S. Dist. LEXIS 75970, at *5-6 (E.D. Va. July 14, 2011). "Indeed, the text of the statute explicitly states that "[n]othing in this chapter ... creates, nor shall it be construed to create, an independent or private cause of action ... except as specifically provided in subsections B and C." Va. Code § 2.2-3903(A)." *Harsall v. Va. Motor Lodges, Inc.*, 2018 U.S. Dist. LEXIS 28272 at *7 (W.D. Va. February 22, 2018). Thus, Title IX and VHRA are not more analogous and this Court should rule, along with every other circuit, that Title IX uses the state's personal injury statute of limitations (here, two years).

### B. The Statute of Limitations Accrues on the Date Plaintiff's Appeal was Denied.

Although the limitations period for some federal civil rights actions is determined by state law, federal law determines when a claim accrues. *See Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977), cert. denied, 444 U.S. 842 (1979); *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975); *Sabet v. Eastern Va. Medical Auth.*, 611 F. Supp. 388, 397 (E.D. Va.), *aff'd,* 775 F.2d 1266 (4th Cir. 1985). Most of the federal law regarding accrual has been decided under the Title VII (employment discrimination) framework through a Supreme Court case and its progeny. *See, Delaware St. College v. Ricks*, 449 U.S. 250 (1980). In *Ricks*, the court held that the statute of limitations began to run at the time of the challenged employment practice (when he was denied tenure), not when the professor's terminal contract expired a year later. *Id. Ricks* and its progeny have held that in determining the accrual date of the statute of limitations, the focus is on the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful. *Id.* at 258.   In this case, *Ricks* is distinguishable from this matter in three ways: 1) the effects were not "clearly known" at the time of the first notice of responsibility; 2) the appeal as well as a statute were continuing violations; and 3) this is a Title IX matter, not Title VII.

### 1. The Effects were not "Clearly Known" at the Time of the First Notice.

Per *Ricks* and Fourth Circuit law, the effects of the violation must be "clearly known" for the statute of limitations to accrue. *See, Ricks*, 449 U.S. at 258; *see also, Lendo v. Garrett Cty. Bd. of Educ.*, 820 F.2d 1365, 1367 (4th Cir. 1987). Here, Virginia Tech's policies make it so that the effect are not "clearly known" until such time as a final decision is made on the appeal appeal. Specifically, Virginia Tech obscures the effect and finality of its decision making process.  The Hokie Handbook and any denial of appeal letters issued by Virginia Tech indicate that a case is not concluded and sanctions do not go into effect until the completion of the appeal process. The effects of the decision at the

8

conclusion of a conduct hearing cannot be "clearly known" because the process is not over should the parties choose to appeal.

Plaintiff pled that he appealed his decision on May 24, 2017. Compl. ¶ 51. He also pled that he did not receive the results of that appeal until June 14, 2017. Compl. ¶ 53. Because the outcome was not "clearly known" until the date of the appeal decision, the accrual date should be the date of that decision, June 14, 2017. As such, Plaintiff filed his complaint within the applicable statutory period.

### 2. The Appeal, as well as a Statute, were Continuing Violations.

The appeal as well as the newly-enacted statute (Va. Code § 23.1-900) were continuing violations, which extended the statute of limitations accrual date. The "continuing violation" doctrine "allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period." *Jensvold v. Shalala*, 829 F. Supp. 131, 135 (Md. Dist. 1993) (citing *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). As explained by Judge Ellis in an Eastern District of Virginia case, the continuing violation rule "reflects the court's efforts to reconcile the inherent tension between two important principles -- the general policies undergirding [statutes of limitation] and the broad remedial intent of Congress in enacting civil rights laws." *Bradley v. Carydale Enterprises*, 707 F. Supp. 217, 221 (E.D. Va. 1991) ("*Bradley*") (over-ruled on other grounds). In *Bradley*, Judge Ellis based his opinion on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ("*Havens Realty*").

In *Havens Realty*, a housing discrimination case, the Supreme Court recognized that "a 'continuing violation' . . . should be treated differently from one discrete act of discrimination." *Id.* at 381. Specifically, the *Havens Realty* court held that where a plaintiff challenges not just one incident of conduct, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the statutory limit from] **the last asserted occurrence of that practice**. *Id.* at 381.

Although related to Eleventh Amendment immunity, the Ninth Circuit has also held that negative entries in a student's university record stemming from an allegedly unconstitutional action presented a continuing violation. *Flint v. Dennison*, 488 F.3d 816, 925 (9th Cir. 2007); *see also*, *Doe v. Univ. of Colorado, Boulder*, 255 F. Supp. 3d 1064, 1082 (D. Colo. 2017). Thus, when Virginia Tech entered a negative finding on Plaintiff's transcript pursuant to the statute based on an allegedly unconstitutional action, it was also a continuing violation.

The *Ricks* court also discussed "continuing violation." *Ricks*, 449 U.S. at 257. That Court held that a continuing violation did not occur because the only act of discrimination alleged was the original act. *Id.* at 257-58 ("termination of employment at Delaware State is a delayed, but inevitable consequence of the denial of tenure"). That is distinguishable from this case in which the acts alleged are not an inevitable consequence. Indeed, the appeal could have reversed Virginia Tech's decision and is part of the process. Additionally, the appeal itself was a separate violation of due process and Title IX. If this is not clear by the allegations of the complaint, Plaintiff should be granted leave to amend to make it clear.

The appeal process itself violated Plaintiff's constitutional rights and also satisfies the continuing violation doctrine. Defendant Keene deprived Plaintiff of a meaningful opportunity to be heard on appeal. Compl. ¶ 53.

Moreover, Va. Code § 23.1-900, which was enforced against Plaintiff the summer of 2018, was also a continuing violation of Plaintiff's constitutional rights. The statute violates due process on its face by being enforced not only against students who have been found responsible, but also enforced against students who left school during the investigation period before a decision was made. Further, it treats accused students of "sexual violence" different than students who were found responsible for other student conduct violations. Because this "prominent mark" on Plaintiff's transcript was based on the unconstitutional process described in the Complaint, it is a

10

continuing violation of Plaintiff's constitutional rights, thereby extending the accrual date to the summer of 2018.

### 3.   This is a Title IX matter, not Title VII.

Plaintiffs have found no Fourth Circuit case law involving Title IX claims that requires this Court to follow *Ricks*. As stated above, *Ricks* involved a Title VII employment discrimination claim of a professor, and the case was from over 40 years ago. Though Title IX does borrow heavily from Title VII, the circumstances of a student facing discipline by his school is quite different than a professor who is an employee at will.

### 4.   Even if the Court decides the accrual date is the date of first notice, this Complaint was filed within that time period.

Plaintiff argues that even using the accrual date of the initial notice (May 16, 2017), Plaintiff filed this complaint well within the two-year statute of limitations when he filed on October 23, 2018.

## C.  The Claim was Subject to Equitable Tolling.

Plaintiff is entitled to the benefits of equitable tolling. While federal courts have determined that equitable tolling is a remedy that should be applied sparingly, *see Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, (1990), it is available when a defendant misled or deceived a plaintiff to prevent the plaintiff from either discovering the existence of a cause of action or filing a timely claim. *See Olson v. Mobil Oil Corp.,* 904 F.2d 198, 201 (4th Cir. 1990). To receive the benefit of equitable tolling, a plaintiff has to establish that "'(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim; (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence.'" *Barnes v. West, Inc.,* 243 F. Supp. 2d 559, 563 (E.D. Va. 2003) (citing *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,* 71 F.3d 119, 122 (4th Cir. 1995)).

11

Plaintiff filed this action within the statute of limitations period from the date of the denial of his appeal. Looking to both the Hokie Handbook and to the final appeal decision letter received by Plaintiff (cited above and attached as exhibits), it is clear that the final decision did not take effect until the denial of the appeal letter on June 14, 2017.  Plaintiff filed his complaint on October 23, 2018, well within the two-year statute of limitations as argued above. Additionally, any filing delay was due entirely to Defendants' policies and previous written statements as to their conduct process which amounts to fraudulent concealment. Defendants concealed and clouded the applicable cause of action date through their own efforts. It was impossible for Plaintiff to discover that fact within the statutory period and therefore, Plaintiff should be permitted to proceed, in the interest of justice.

## II.    Violation of 42 U.S.C. § 1983

Plaintiff sufficiently pleads that he was deprived of constitutionally protected liberty and property interests without the requisite process.

### A. Protected Property and Liberty Interests.

In analyzing a due process claim, a court must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of "life, liberty or property." *See Ingraham v. Wright,* 430 U.S. 651 (1977); *Board of Regents v. Roth,* 408 U.S. 564 (1972). If so, the court must then determine what process is due. *Id.* Regardless of how Defendant choose to characterize Plaintiff's deprivation, there is no question "that any expulsion from a state university or college must comport with the Due Process Clause of the Fourteenth Amendment." *Tigrett v. Rector & Visitors of Univ. of Virginia,* 137 F. Supp. 2d 670, 675 (W.D. Va. 2001), *aff'd,* 290 F.3d 620 (4th Cir. 2002).

### 1.   Plaintiff has a Property Interest in his Education.

While a protected property interest cannot be created by the Fourteenth Amendment itself, the Fourth Circuit has consistently taken the approach of assuming "that a person has a constitutionally protectable property interest in enrollment in a state college, university, or other post-

12

secondary educational facility." *Doe v. Rector & Visitors of George Mason Univ.,* 132 F. Supp. 3d 712, 721 (E.D. Va. 2015) Defendants gloss over the specific factual assertions within the Complaint that demonstrate how Plaintiff was deprived of his fundamental right to an education, without being afforded the appropriate process. Their assertion that Plaintiff does not specifically plead that he is being denied an education is belied by the Complaint itself. *See* Compl. ¶¶ 48, 63-66, 87, 95. Notwithstanding, Plaintiff is not required to outline every instance in which Virginia Tech's conduct in reaching the erroneous finding has impacted his educational or employment opportunities to date; this is a matter that is more appropriately explored further in discovery. At this stage, accepting all allegations in the Complaint as true, Plaintiff has sufficiently pleaded that he was deprived of his fundamental property right to an education. *See Doe v. Alger,* 175 F. Supp. 3d 646, 658 (W.D. Va. 2016) ("while the court is "not now hold[ing] that [Doe] has any legitimate claim of entitlement to [continued enrollment], it will give him the opportunity to prove the legitimacy of his claim to a property right "in light of the policies and practices of the institution.") (internal citations omitted).

### 2.  Plaintiff has a Liberty Interest in his Reputation.

Even if the Court were not to recognize Plaintiff's property interest in his continued education, the suspension also deprived him of a qualifying liberty interest that warrants the procedural protections of the Fourteenth Amendment. The Supreme Court long ago made clear that a liberty interest is implicated "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *See Wisconsin v. Constantineau,* 400 U.S. 433, 437 (1971). This reputational liberty interest has also been invoked in the school disciplinary context since the Supreme Court in *Goss v. Lopez* (419 U.S. 565 (1975)) held that public school students suspended due to allegations of misconduct had been deprived of a liberty interest and were entitled to the protections of the due process clause. In discussing the reputational liberty interest at stake, the Court recognized that charges of misconduct "could seriously damage the students' standing with their fellow pupils

and their teachers as well as interfere with later opportunities for higher education and employment." *Id.* at 575.

To state a procedural due process liberty interest claim, a plaintiff must however allege more than just reputational injury. Under what has become widely known as the "stigma-plus" test, a plaintiff asserting a reputational liberty interest protected by the Fourteenth Amendment must show both (i) the infliction by state officials of a "stigma" to plaintiff's reputation *and* (ii) the deprivation of a legal right or status. *See Paul v. Davis,* 424 U.S. at 710–11, 96 S.Ct. 1155; *Shirvinski v. U.S. Coast Guard,* 673 F.3d 308, 315 (4th Cir.2012) (noting that the "stigma plus" test is met if the plaintiff's "reputational injury was accompanied by a state action that 'distinctly altered or extinguished' his legal status"). With respect to the first element, Plaintiff has adequately alleged that he was wrongly held responsible for sexual misconduct and that this label will impair his ability to attain future educational and employment opportunities. Compl. ¶¶ 64-66, 74, 87, 95. Absent the relief sought in this litigation, the record of suspension will remain permanently in his file and future educational institutions and employers will likely learn about the allegations and findings. Second, there is no question that "expulsion from a public school clearly constitutes the sort of deprivation or change in "legal status" actionable under the stigma-plus test." *Doe v. Rector & Visitors of George Mason Univ.,* 132 F. Supp. 3d 712, 722 (E.D. Va. 2015) Based on the foregoing, it is clear that both liberty and property interests are implicated because Plaintiff was suspended from a public university without adequate process.

**B. Plaintiff was Deprived of his Procedural Due Process Rights When he was not Provided Proper Notice or a Meaningful Opportunity to be Heard.**

While a full-scale adversarial proceeding is not required in the context of a university disciplinary matter, the University was required to provide at least minimal procedural due process protections, including (1) notice and (2) a meaningful opportunity to be heard. *See Mathews v. Eldridge,* 424 U.S. 319 (1976). The Fourth Circuit has adopted the standard set forth in *Dixon v. Ala. State Bd.*

*Of Educ.* to determine whether due process was afforded in the context of a student disciplinary matter where a student potentially faces expulsion:

> As a general matter, a student threatened with expulsion is entitled to notice that contain[s] a statement of the specific charges and grounds which, if proven, would justify expulsion. And where the charge is misconduct, a hearing which gives the ... administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required ... Nevertheless, ... the student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies. He should also be given the opportunity to present to ... an administrative official of the college, his own defense against the charges and to produce either oral testimony or written affidavits of witnesses on his behalf. If the hearing is not before the [administrator] directly, the results and findings of the hearing should be presented in a report open to the student's inspection.

*Doe v. Rector & Visitors of George Mason Univ.,* 149 F. Supp. 3d 602, 615 (E.D. Va. 2016) (citations and quotations omitted). The mere fact an investigation was performed and a hearing held does not in and of itself establish that the requisite due process was afforded. Here, Plaintiff clearly articulates how he was deprived of his fundamental rights to a fair proceeding.

Plaintiff was first notified about his involvement in a potential policy violation by Katie Reardon Polidoro on March 14, 2017. The letter indicated he was involved in an incident that required the attention of the Title IX office. Notwithstanding that the conduct at issue had occurred a month prior, the notice failed to identify the date or location of the alleged incident, or the specific policies allegedly violated. Compl. ¶ 32. This failure to provide Plaintiff with notice of the specific charges against him was a clear violation of his fundamental rights.

Virginia Tech also deprived Plaintiff of his fundamental rights when it did not afford him a meaningful opportunity to be heard. First, investigator Polidoro failed to interview a witness for Plaintiff despite his indication that the witness would present favorable information on his behalf. Compl. ¶ 40. Second, during the hearing, Plaintiff was not permitted to directly question either Roe or the investigator, nor was he permitted to pose questions that focused on a discrepancy within the

investigative report. Compl. ¶¶ 39, 41-43. Instead, he was limited to submitting questions that were intended to gain clarification only. Third, during the hearing, despite Roe asserting that she was unable to remember any of the events of February 11, 2017, Plaintiff was not permitted to ask Roe any questions concerning her level of intoxication. Compl. ¶ 42. In fact, Hearing Agent McCrery advocated on behalf of Roe during the hearing and attempted to prevent Plaintiff from asking her any questions due to her lack of memory of the incident. *Id.* Each of the foregoing contributed to a hearing that deprived Plaintiff of the opportunity to present a full and meaningful defense.

### C.   The Individual Defendants are not Entitled to Qualified Immunity.

Defendants further seek dismissal of Plaintiff's Fourteenth Amendment claim on the grounds that the individual defendants are entitled to qualified immunity for their discretionary actions. The Complaint, however, pleads sufficient facts that would strip the qualified immunity from the university officials named in their individual capacities. In considering a qualified immunity defense on a motion to dismiss, a Court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223 (2009). Here, the qualified immunity defense cannot withstand the stringent standard of a rule 12(b)(6) motion to dismiss.

### 1.   The Individual Defendants Violated Plaintiff's Constitutional Rights.

In his Complaint, Plaintiff clearly pleads how the Virginia Tech individual defendants deprived him of a protected liberty and property interest in his public education without due process when they conducted a biased and procedurally flawed investigation and adjudication, and ultimately issued a disproportionately severe sanction of suspension. In his Complaint, Plaintiff connects the individual defendants' participation in the investigation process directly to the constitutional deprivations.

Defendant Polidoro deprived Plaintiff of his right to proper notice of the charges against him when she provided a letter vaguely indicating that the office had received information alleging his

involvement in an incident that required the attention of the Title IX office, but did not identify the date or location of the alleged incident, nor did she notify Plaintiff of the specific policies he allegedly violated.  Compl. ¶ 32. Polidoro further violated Plaintiff's fundamental rights when she conducted a one-sided investigation that did not permit him a full and fair opportunity to present witnesses and evidence on his behalf; for instance, by failing to contact a witness identified by Plaintiff, while contacting Roe's witnesses and by giving untenable weight to Roe's statement despite her admission that she had no memory of any alleged incident. Compl. ¶ 34, 35, 40.

Facts were also adequately pled regarding Defendant Reistad. Reistad was the hearing officer during Plaintiff's hearing. During the hearing, Plaintiff was not able to cross-examine or ask any questions directly to witnesses or his accuser. He would ask the questions to Reistad, who would rephrase the question (showing his own bias) or refuse to ask the question entirely. Compl. ¶¶ 39, 41-42.

Defendants McCrery and Reistad deprived Plaintiff of a meaningful opportunity to be heard before an impartial panel of decision-makers when they advocated on behalf of Roe during the hearing, dissuading him from submitting questions for Roe due to her lack of memory. Compl. ¶ 42. McCrery and Reistad further violated Plaintiff's rights when they hindered his ability to ask questions of witnesses. *Id.* ¶43.

Defendant Frances Keene deprived Plaintiff of a meaningful opportunity to be heard on appeal. Keene disregarded Plaintiff's new evidence concerning his case and the bias he identified in both the investigation and hearing processes. Compl. ¶¶ 51-53.

Defendant Frank Shushok, Jr., as the Vice President for Student Affairs, has oversight over disciplinary procedures at Virginia Tech. President Timothy Sands, as President of Virginia Tech, directs and approves the policies of Virginia Tech. As supervisors, they can be held liable for violations of Plaintiff's rights under section 1983 "if the evidence showed that conduct directly causing the

constitutional deprivation was done to effectuate an official policy or custom" for which they are "responsible." *Fisher v. Washington Metropolitan Area Transit Authority*, 690 F.2d 1133, 1143 (4th Cir. 1982), abrogated on other grounds, *County of Riverside v. McLaughlin,* 500 U.S. 44 (1991), *see also Dodds v. Richardson,* 614 F.3d 1185, 1199 (10th Cir. 2010) (concluding that "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights ... secured by the Constitution ... .") (internal citation and quotation omitted).

As described above, Plaintiff has alleged a deprivation of actual constitutional rights: (i) the right to written notice of the charges against him; (ii) a hearing before an impartial tribunal; (iii) the right to question one's accuser; (iv) the right to challenge the credibility of witnesses; and (iv) the right to present evidence and witnesses in support of his defense.

## 2. Plaintiff's Constitutional Rights Were Well-Established.

The Fourth Circuit has acknowledged the fundamental constitutional principle that notice and an opportunity to be heard must be afforded before an individual can be deprived of his liberty or property rights. *See Dixon,* 294 F.2d 150. As described above, it is generally accepted that a student's interest in pursuing a public education falls within the liberty and property protections of the Fourteenth Amendment. *See Goss v. Lopez,* 419 U.S. 565 (1975). Because this principle irrefutably extends to the university disciplinary context, "any expulsion from a state university or college must comport with the Due Process Clause of the Fourteenth Amendment." *Tigrett v. Rector & Visitors of Univ. of Virginia,* 137 F. Supp. 2d at 675 (W.D. Va. 2001).

As outlined above and as detailed in the Complaint, Plaintiff was deprived of his constitutional rights throughout Virginia Tech's investigation and adjudication process. Accepting the facts as alleged, any reasonable person in the defendants' positions would recognize Plaintiff was deprived of

18

his engrained liberty and property interests when he was suspended from Virginia Tech, without due process.

### D. The Virginia Constitution is co-extensive with the U.S. Constitution – and Plaintiff's claims survive under both.

"[P]rovisions of the Constitution of Virginia that are substantively similar to those in the United States Constitution [are] afforded the same meaning." *DiGiacinto v. GMU Rectors & Visitors*, 281 Va. 127, 134 (2011). Plaintiff alleges deprivation of the due process protected by the Virginia Constitution.  It provides residents of the Commonwealth with the right to due process, in addition to those same rights granted by the U.S. Constitution. Under settled law, the "corresponding provisions of the Virginia Constitution go no further than their federal counterparts." *Lilly v. Commonwealth*, 50 Va. App. 173, 184 (2007) (citing *Rowley v. Commonwealth*, 48 Va. App. 181, 187 n.2 (2006)).  Thus, federal due process principles "subsume any analysis of parallel provisions in the Virginia Constitution." *Id.* at 184; *see also Ingram v. Commonwealth*, 62 Va. App. 14, 25 n.6 (2013) ("Because the due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution, the same analysis will apply to both." (internal quotation marks omitted)).  Article 1, Section 11 of the Virginia Constitution guarantees "that no person shall be deprived of his life, liberty or property without due process." This is clearly analogous to the Fifth Amendment of the U.S. Constitution.  Under *DiGiacinto*, Article I, Section 11 should be afforded the same meaning as the Fourteenth Amendment.[4]

For the same reasons Plaintiff has adequately pled facts regarding the infringement of his right to due process under the United States Constitution, he has sufficiently pled facts the Virginia Constitution in Count II.

---

[4] Defendants agree that the U.S. Constitution and the Virginia Constitution are co-extensive. Dkt. 19 at 22.

### III.   Violation of Title IX[5]

### A.  The Controlling Title IX Standard.

Title IX bars the imposition of university discipline where gender is a motivating factor in the decision. In *Yusuf v. Vassar Coll.,* 35 F.3d 709, 715 (2d Cir. 1994), the Second Circuit held that a plaintiff's challenge to a university disciplinary proceeding on grounds of gender bias will generally fall within two categories. Under the first category, the claim is that there is an "erroneous outcome" in plaintiff being found to have committed an offense and disciplined. *Id.* Under the second category, the plaintiff alleges "selective enforcement" in terms of selective initiation or severity of penalty. *Id.* Concerning a claim under the "erroneous outcome" category, the *Yusuf* court specified "the pleading burden in this regard is not heavy. For example, a complaint may allege particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge. A complaint may also allege particular procedural flaws affecting the proof." *Yusuf v. Vassar Coll.,* 35 F.3d at 715 (2d Cir. 1994). The *Yusuf* standard remains the controlling legal standard for a gender bias claim brought under Title IX.   *See Doe v. Washington & Lee Univ.,* No. 6:14-CV-00052, 2015 WL 4647996, at *9 (W.D. Va. Aug. 5, 2015).

Since Title IX was modeled after Title VI and VII of the Civil Rights Act of 1964, courts have frequently applied Title VII's framework and principles to Title IX claims. *See Jennings v. Univ. of N. Carolina,* 482 F.3d 686, 695 (4th Cir. 2007) ("We look to case law interpreting Title VII of the Civil Rights Act of 1964 for guidance in evaluating a claim brought under Title IX.") For instance, because evidence of discrimination would most likely be within the defendants' sole possession and control at the pleading stage, allegations made upon information and belief are sufficient to withstand a motion to dismiss. *See Grajales v. P.R.Ports Auth.,* 682 F.3d 40, 49 (1st Cir.2012) (""[s]moking gun'

---

[5] Plaintiff brings his Title IX claim against Virginia Tech only.

proof of discrimination is rarely available ... at the pleading stage"); *Menard v. CSX Transp., Inc.,* 698 F.3d 40, 44 (1st Cir.2012) ("information and belief" is appropriate in pleadings, does not mean pure speculation).

Here, the Court's role is to determine whether a claim has facial plausibility -- that is, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Blank v. Knox Coll.,* No. 14-CV-1386, 2015 WL 328602, at *2 (C.D. Ill. 2015) (internal citations omitted). Moreover, "*Iqbal* does not require that the inference of discriminatory intent supported by the pleaded facts be *the most plausible* explanation of the defendant's conduct." *Doe v. Columbia,* No. 15-1536, 2016 WL 4056034 at *8 (2d Cir. July 29, 2016). Adopting the legal principles from Title VII cases, Judge Leval clarified the pleading standards for a Title IX claim at the motion to dismiss stage in *Doe v. Columbia* as follows:

> A complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent, like a complaint under Title VII, if it pleads specific facts that support a *minimal plausible inference* of such discrimination.

*Doe v. Columbia,* No. 15-1536, 2016 WL 4056034 at *4 (2d Cir. July 29, 2016). Judge Leval's decision follows the *McDonnell-Douglas* framework in which plaintiffs alleging employment discrimination in violation of Title VII need present only minimal evidence supporting an inference of discrimination in order to prevail.[6] Extending this principle to the Title IX context, the Second Circuit noted: "[w]hen the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side…it is plausible to infer…that the evaluator has been influenced by bias." *Doe v. Columbia,* No. 15-1536, 2016 WL 4056034 at *8 (2d Cir. July 29, 2016).

---

[6] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, (1993).

## B.  Plaintiff sufficiently pleads an Erroneous Outcome claim.

First, Plaintiff has plausibly alleged that an erroneous finding was reached and he was innocent of the charges. Compl. ¶¶ 47, 52, 61, 74-77. As demonstrated by statements made to Polidoro, Roe established that she remembered zero details of the interaction (in contrast to later statements). *Id.* ¶¶ 35, 42. Had Roe's lack of memory, the lack of evidence, and disparity in accounts been properly considered during the investigative process, there is a question as to whether the outcome would have changed.

Second, Plaintiff has sufficiently alleged that the erroneous finding was motivated by gender bias. Not only does Plaintiff address the procedural errors that arose from a biased investigation process, but he also outlines the internal and external pressures that contributed to the gender-biased finding, including ongoing OCR investigations, and numerous media reports surrounding universities' handling of sexual assault committed by male students on college campuses around the country. Compl. ¶ 78. Plaintiff further addresses how the foregoing has led Virginia Tech to treat "male students accused of sexual misconduct by female students more aggressively" and the disparate treatment afforded male and female respondents. Compl. ¶ 78. Finally, Plaintiff notes the pattern of unfair investigations and adjudications engaged in by the University which has resulted in harsher sanctions on male students only. Compl. ¶ 79.

Here, based on the totality of the circumstances, Plaintiff has plausibly demonstrated how the erroneous finding against him was motivated by gender bias. *See Doe v. Washington and Lee University*, WL 4647996 *10 ("Given the totality of the circumstances, including the flaws in the proceedings and statements made by W&L officials, Plaintiff has plausibly established a causal link between his expulsion and gender bias"). Analogous to the Title VII framework, it is generally accepted that, in the discrimination context, a court "cannot hold plaintiffs to a standard that would effectively require them, pre-discovery, to plead evidence." *Cooperman v. Individual Inc.*, 171 F.3d 43, 48-9 (1st Cir. 1999)

(citation omitted). Given what is actually alleged, Plaintiff has presented a plausible claim for a violation of Title IX and should be permitted the opportunity to develop these claims in discovery.

## IV.    Count VI States a Claim for Virginia's Law of Associations

The Supreme Court of Virginia's decision in *Gottlieb v. Econ. Stores, Inc.*, recognizes that corporate entities are generally permitted to expel their shareholders or members, but not for arbitrary or bad faith reasons. 199 Va. 848, 855-57 (Va. 1958) "The *Gottlieb* court curtailed the authority of reviewing courts to question the decision of a corporation to expel its member(s) to those cases involving 'fraud, bad faith, breach of trust, gross mismanagement, or *ultra vires* acts.'" *Doe v. Marymount Univ.*, 297 F. Supp 573, 590 (E.D. Va. 2018) (quoting *Gottlieb* at 857) ("*Marymount*"). This is analogous to Virginia Tech arbitrarily and capriciously finding Doe responsible for alleged sexual misconduct via a biased process and then suspending him. *Gottlieb* also states that "[i]n cases where the evidence is conflicting, the action of the corporation is conclusive, if it is in accordance with the law and the powers conferred upon the corporation." *Id.* at 857-58. Defendants argue that this means the Court should certify their decision without further consideration since evidence in the underlying conduct hearing related to this case was conflicting. Dkt. 19 at 30-31. However, Plaintiff contends that Defendants actions in the underlying conduct decision were neither in accordance with the law nor the powers conferred upon them. Compl. ¶¶ 59-62, 69, 72-77, 86, 90-94, 98-101.

Additionally, a Virginia Circuit Court has held that a plaintiff can establish their claims for relief from a higher education institution's conduct process "on the basis contract, the law of associations or a duty to comply with the procedures it represents will be afforded as a matter of fairness." *Helton v. Univ. of Richmond*, 2 Va. Cir. 254 (Richmond Cir. Ct. 1985). Doe's case is similar to the facts of *Helton* and he is entitled to relief. While the *Marymount* Court failed to find these arguments persuasive, it is not controlling precedent. It is up to this Court's own discretion as to whether or not Plaintiff has adequately pled a claim for common law right of associations.

## V.      Declaratory Judgment

There is no doubt that Plaintiff has standing to pursue a claim for injunctive relief, given the nature of the ongoing harm- namely, the negative transcript notation associated with the finding of responsibility against him. Under the *Ex parte Young* exception, the Eleventh Amendment does not bar a federal court from awarding this type of equitable prospective relief to Plaintiff. *See Johnson*, 71 F.Supp.3d at 1230 ("a request to expunge an academic record is a request for prospective relief" and not barred by the Eleventh Amendment); *see also Doe v. Cummins*, 662 Fed. Appx. 437, 444 (6th Cir. 2016) (no Eleventh Amendment bar to expunging record of sexual assault discipline from a state university's *1082 files); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (negative entries in a student's university records stemming from an allegedly unconstitutional action presented a continuing violation sufficient to overcome Eleventh Amendment immunity); *Shepard v. Irving*, 77 Fed. Appx. 615, 620 (4th Cir. 2003) (request to expunge grade from record is not barred by Eleventh Amendment); *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995) (injunction requesting expungement of negative entries from personnel record not barred by the Eleventh Amendment); *Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado,* 255 F. Supp. 3d 1064, 1081–82 (D. Colo. 2017).

Part and parcel with this claim is an obligation to identify the individual state official charged with enforcing the matter at issue. Here, because Plaintiff seeks an expungement of his disciplinary record, the authority to carry out such a task would presumably lie with either the President of the Virginia Tech (Defendant Sands) and/or the Senior Assistant Vice President of the Virginia Tech (Defendant Shushok, Jr.). Accordingly, Plaintiff has standing to pursue his claim for prospective injunctive relief against the individually named defendants.

## VI.      Defendants' 12(b)(1) Motion Should Also be Denied

Virginia Tech and its officials are not immune. The Supreme Court has recognized a vital exception to the general rule that state officials sued in their official capacities are not "persons" within

the meaning of § 1983; namely, "When sued for prospective injunctive relief, a state official in his official capacity *is* considered a "person" for § 1983 purposes." *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. 2304 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985))). This exception recognizes the principle of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which provides that a suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity. *See Rounds v. Or. State Bd. of Higher Educ.,* 166 F.3d 1032, 1036 (9th Cir.1999) ("*Ex Parte Young* provided a narrow exception to Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief against unconstitutional actions taken by state officers in their official capacities."); *Doe v. Lawrence Livermore Nat'l Lab.,* 131 F.3d 836, 840 (9th Cir.1997) ("[T]he Eleventh Amendment allows only prospective injunctive relief to prevent an ongoing violation of federal law."). *Flint v. Dennison,* 488 F.3d 816, 825 (9th Cir. 2007)

Moreover, the Eleventh Amendment does not bar Plaintiff from pursuing his claims against the individually named defendants for monetary damages. *See Tigrett v. Rector & Visitors of Univ. of Virginia,* 97 F. Supp. 2d 752, 756 (W.D. Va. 2000) ("the 11th Amendment neither bars Tigrett's suit against the individual defendants in their official capacities to the extent that he seeks prospective injunctive relief, *see Cobb,* 69 F.Supp.2d at 824; *see also Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), nor his suit against the individual defendants in their personal capacities for monetary damages.")

Here, Plaintiff clearly asserts claims for both monetary damages- "compensatory and punitive damages"- and prospective injunctive relief- "a permanent injunction (a) restraining Virginia Tech, and all those acting in consort with Virginia Tech, from continuing to enforce any punishment against

him and from making any notation on his transcript or keeping any record relating to his disciplinary

hearing in Mr. Doe's education records, and (b) ordering that Virginia Tech rescind and expunge the

sanctions entered against him by Virginia Tech." Accordingly, the well-established exception to the

general rule prohibiting § 1983 actions against individual defendants named in their official capacities

applies and Plaintiff is entitled to pursue this claim for prospective injunctive relief.

## CONCLUSION

For the reasons stated above, the Defendants' Joint Motions to Dismiss the Complaint

pursuant to Rules (12(b)(6) and 12(b)(1)) should be denied in their entirety, and the Court should grant

such further and other relief as is deemed just and proper. Alternatively, the Court should exercise its

discretion to grant Plaintiff leave to amend his Complaint. Fed. R. Civ. P. 15(a).

Dated: February 11, 2019                                    JOSEPH DOE
                                                            *By Counsel*


By: /s/ Jesse R. Binnall
Jesse R. Binnall, VSB # 79292
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, Virginia 22314
(703) 888-1943
(703) 888-1930 – facsimile
jbinnall@harveybinnall.com

Nesenoff & Miltenberg, LLP
Andrew T. Miltenberg
Tara Davis
363 Seventh Avenue, 5th Floor
New York, NY 10001-3904
Tel: (212) 736-4500
Fax: (212) 736-2260
amiltenberg@nmllplaw.com
tdavis@nmllplaw.com
(Admitted *pro hac vice*)

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on this 11th day of February, 2019, I filed the foregoing using the CM/ECF system, which will provide notice to all counsel of record.

By: /s/ Jesse R. Binnall
Jesse R. Binnall, VSB # 79292
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com

Nesenoff & Miltenberg, LLP
Andrew T. Miltenberg
Tara Davis
363 Seventh Avenue, 5th Floor
New York, NY 10001-3904
Tel: (212) 736-4500
Fax: (212) 736-2260
amiltenberg@nmllplaw.com
tdavis@nmllplaw.com
(Admitted *pro hac vice*)
*Counsel for Plaintiff*