IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | Civil Action No. 7:18-cv-170 |
|   v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| VIRGINIA POLYTECHNIC INSTITUTE | ) |      United States District Judge |
| AND STATE UNIVERSITY, *et al.*, | ) | |
| | ) | |
|       Defendants. | ) | |

---

| | | |
|---|---|---|
| JAMES DOE, | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | Civil Action No. 7:18-cv-320 |
|   v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| VIRGINIA POLYTECHNIC INSTITUTE | ) |      United States District Judge |
| AND STATE UNIVERSITY, *et al.*, | ) | |
| | ) | |
|       Defendants. | ) | |

---

| | | |
|---|---|---|
| JACK DOE, | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | Civil Action No. 7:18-cv-492 |
|   v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| VIRGINIA POLYTECHNIC INSTITUTE | ) |      United States District Judge |
| AND STATE UNIVERSITY, *et al.*, | ) | |
| | ) | |
|       Defendants. | ) | |

---

| | |
|---|---|
| JOSEPH DOE, | ) |
| | ) |
|      Plaintiff, | ) |
| | )   Civil Action No. 7:18-cv-523 |
|  v. | ) |
| | )   By:  Elizabeth K. Dillon |
| VIRGINIA POLYTECHNIC INSTITUTE | )         United States District Judge |
| AND STATE UNIVERSITY, *et al.*, | ) |
| | ) |
|      Defendants. | ) |

---

## MEMORANDUM OPINION

Each of these four cases involves a male plaintiff who was a student at defendant Virginia Polytechnic Institute and State University (Virginia Tech), alleges that he was wrongfully accused of some type of sexual misconduct, and was disciplined by Virginia Tech. In each, the court granted leave to proceed by pseudonym, and the court will refer to each plaintiff by that name (and/or the last three numbers of his corresponding case number) throughout this opinion. In their respective complaints, the plaintiffs name the university as well as individual employees of Virginia Tech who were involved in the disciplinary proceedings.

The four cases are not consolidated but are related in some ways. Significantly, the cases are brought by the same counsel, assert the same claims (although the factual basis underlying those claims is different for each case), and the defendants raise nearly identical arguments in their motions to dismiss, so there is significant overlap as to the legal challenges before the court. Accordingly, the court held a single hearing to address the pending motions in all four cases. At the hearing, a number of the issues raised in the briefing were resolved, either by agreement or by the court's ruling. This opinion addresses all of the remaining issues raised by the pending motions in each case.

## I.  BACKGROUND

Because the court's rulings make it unnecessary to discuss all four plaintiffs' claims in detail, the court discusses detailed factual background only as needed and in the course of its legal discussion.  But the court provides here an extremely over-simplified view of the facts of each case, simply to help place the legal claims and issues in context.

John Doe (-170 case) was a varsity track athlete set to graduate from Virginia Tech in the spring of 2016.  He was accused by Jane Roe of attempting to sexually assault her in January 2016, but he claims there was no encounter with her at all and instead that she misidentified him and mistook him for some other track athlete.  After a hearing, he was found responsible for several violations of Virginia Tech policies, including verbal/non-verbal assault, sexual assault, and battery, and he was expelled.  He appealed, but the appeal was denied.

James Doe (-320 case) was accused of sexually assaulting Jan Roe in November 2015 after a date party at which both had consumed alcohol.  He claims that the encounter was consensual.  In April 2016, she lodged an accusation against him, and, after a hearing, he was found responsible for rape.  He was permanently dismissed from the university and required to leave campus within 24 hours.  His appeal was denied.

Jack Doe (-492 case) was a Ph.D. student who was accused of sexually assaulting another male student in August 2015 after both had consumed alcohol.  Jack claimed the encounter was consensual, but he was found responsible for sexual battery in September 2016 and suspended for one year (until Summer session 2017).  He appealed, but the decision was not reversed.

Lastly, Joseph Doe (-523 case) was accused of assaulting June Roe, a fellow student, in February 2017.  Both students were members of the Virginia Tech Snow Club, and they had previously had sexual encounters.  The assault allegedly occurred at a rental house at Snowshoe,

West Virginia, after a day of skiing and when both had consumed alcohol.  Joseph claims that the encounter was consensual and instigated by June.  In May 2017, Joseph was found responsible for sexual violence, rape, and sexual assault, and he was suspended until Fall 2019.  He appealed, but the finding and penalty were not reversed.

Each of the complaints asserts the following claims:

> Count I: a federal procedural due process claim brought pursuant to 42 U.S.C. § 1983, based on both a property interest and a liberty interest;

> Count II: a state procedural due process claim that all parties agree is coextensive with the federal claims and so rises or falls with it;[1]

> Count III: a claim brought pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88 (Title IX), which is, by agreement, now asserted against Virginia Tech only and not any individual defendants;

> Count IV: a common-law negligence claim under Virginia law; and

> Count V: a breach of contract claim under Virginia law.

Additionally, the two-later filed cases include a Count VI that asserts a claim alleging that the defendants' actions in suspending or expelling the plaintiffs violate Virginia's law of associations.  In the two earlier cases, plaintiffs have filed motions to amend their complaints to include the same claim.  Although the proposed amended complaints are unclear, plaintiffs' counsel clarified at the hearing that they were asserting the law-of-associations claims against the individual defendants only and only in their individual capacities.  Each complaint also contains a separate count titled as a "declaratory judgment" count.

---

[1] *Shivaee v. Commonwealth*, 613 S.E.2d 570, 574 (Va. 2005) ("[T]he due process protections afforded under the Constitution of Virginia are coextensive with those of the federal constitution.").  Plaintiffs acknowledge this principle, but argued at the hearing that the time of accrual for the state law claim is governed by Virginia law, not by federal law, and so could be different.  Plaintiffs did not explain how, however, nor did they point the court to any authority supporting a different result on the state-law due process claim.

There are essentially three motions pending in each case.[2]  The first is defendants' motion to dismiss for lack of jurisdiction, the second is defendants' motion to dismiss for failure to state a claim, and the third is plaintiffs' motion for leave to file amended complaints.

In addition to some other changes (such as dropping defendant Scott in -492 and omitting the negligence claims), the primary changes in the proposed amended complaints are three-fold. First, they include an assertion that defendant Shushok has "shown bias against males accused of sexual misconduct on social media," giving as an example that he "said on Twitter that the correct way to deal with sexual violence is to 'talk to our boys.'"  (*See, e.g.*, Joseph's Proposed Am. Compl. ¶¶ 33, 86, Dkt. No. 32-1 (-523 case).)  Second, they include additional allegations related to the appeals by the plaintiffs, including general assertions that the appeals process did not provide a meaningful opportunity for each plaintiff to clear his name and that the appeal process "disproportionately and negatively affects male students."  (*See, e.g.*, *id.* ¶¶ 52, 68, 87.) Third, they include assertions that Virginia Tech's notation on each plaintiff's transcript regarding the basis for his suspension or expulsion constituted a separate due process violation.[3] (*See, e.g.*, *id.* ¶¶ 58, 69.)

At the hearing, plaintiffs' counsel repeatedly sought leave to amend on other grounds, although counsel acknowledged that no second proposed amended complaint has been filed, nor has a subsequent motion to amend.[4]  Nonetheless, the court noted that it would consider whether to grant leave to file another motion to amend after ruling on the motions to dismiss.

---

[2]  In the first two cases, -170 and -320, there are technically only two motions pending, but the first in each (Dkt. No. 34 in both cases) is a two-part motion to dismiss that moves to dismiss both for lack of jurisdiction and for failure to state a claim.

[3]  Such notations are required by Virginia statute, Virginia Code § 23.1-900, although the statute is not referenced in the proposed amended complaints.

[4]  The requested amendments include: the possible addition of a claim challenging the constitutionality of the statute governing the transcript notations; the addition of any facts to support a legitimate entitlement to

In their motions, defendants seek dismissal of all claims on various grounds.  At the motions hearing, the court confirmed that the parties agree that the negligence claims are subject to dismissal with prejudice because plaintiffs failed to give the required notice and the statute of limitations has now run.  Thus, as the court noted at the hearing, Count IV of each complaint is dismissed with prejudice.  Similarly, plaintiffs agree that the breach of contract claim in Count V of each case is barred by the Eleventh Amendment and cannot be brought in this court.  Although they ask that defendants consent to the state claims being heard in the present matter, there is no consent.  Thus, Count V in each complaint also is dismissed, but without prejudice to plaintiffs' ability to assert that claim in state court.

As noted above, the parties also agreed that the individual defendants could not be named in the Title IX counts, and so they are dismissed from those counts.  Plaintiffs also agreed in their briefing that the Commonwealth's Eleventh Amendment immunity bars claims (except the Title IX claim) for money damages against Virginia Tech and all claims for damages against individuals in their official capacities.

After those rulings and concessions, left in the case are the two due process claims (Counts I and II); the Title IX claim (Count III), the claim under Virginia's law of associations, and the count seeking declaratory relief.

The relief under the first two claims also has been limited by agreement.  With regard to the Section 1983 claim, remaining are claims for declaratory and injunctive relief against Virginia Tech, and damages against individuals only in their individual capacities.  The parties dispute whether plaintiffs also may continue with their official capacity claims under the *Ex parte Young* exception, 209 U.S. 123 (1908), which allows official capacity claims under § 1983

continued enrollment so as to support a property interest; additional statements by some of the individual defendants on social media that plaintiffs claim demonstrate gender-biased views; and additional facts to support a claim of gender bias.

to be asserted against state officials where a plaintiff seeks only prospective, injunctive relief. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (recognizing exception); *see also Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) (same). That issue will be addressed in Section II.B. *infra.* As to the state law due process claim, only claims against the individual defendants in their individual capacities remain.

As to those remaining counts, limited in the scope of relief as noted above, defendants have asserted a number of grounds for dismissal. The court addresses them below.

## II. DISCUSSION

### A. Defendants' Motions: Standard of Review

#### 1. Motions to Dismiss for Lack of Jurisdiction

In deciding a Rule 12(b)(1) motion, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). It must, however, "view[] the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Dismissal under Rule 12(b)(1) is proper "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R*, 945 F.2d at 768).

#### 2. Motions to Dismiss for Failure to State A Claim

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

Typically, when a defendant moves to dismiss under Rule 12(b)(6), a court is "limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). It may, however, consider a document attached to a motion to dismiss when the document is "'integral to and explicitly relied on in the complaint,'" and when the document's authenticity is unchallenged. *Zak*, 780 F.3d at 606 (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, the defendants have attached to their motions to dismiss the notice to each plaintiff informing him of the discipline against him and notifying him of the opportunity to appeal. The court believes that these notices are properly

considered on a motion to dismiss because they are integral to the allegations in the complaint, plaintiffs rely on them for their claims, and their authenticity is unchallenged.

## B.      Motions to Dismiss for Lack of Jurisdiction

Defendants' motions to dismiss for lack of subject-matter jurisdiction are premised on a number of grounds.  After the areas of agreement or issues resolved at the hearing, however, only one issue remains as to subject-matter jurisdiction.  Specifically, defendants argue that plaintiffs are not seeking prospective equitable relief so as to fall within the *Ex parte Young* exception to sovereign immunity and to be permitted to proceed on their official-capacity claims. This arguably also affects the viability of the count titled "declaratory judgment," although to obtain declaratory judgment, plaintiffs obviously would have to prevail on one of their substantive claims.[5]

Defendants correctly assert that the *Ex parte Young* exception is not implicated where there is not any ongoing violation of federal law and a plaintiff is simply trying to rectify the harm done in the past.  *Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, No. 7:18cv189, 2018 WL 5018487, at *9–10 (W.D. Va. Oct. 15, 2018) (citing *Puerto Rico Aquaduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).  But here, plaintiffs are seeking to expunge and clear their academic records, among other injunctive relief, which numerous courts have noted is a request for prospective relief and not barred by the Eleventh Amendment.  *E.g.*, *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (explaining that a request to expunge a grade from an academic record is not barred by Eleventh Amendment); *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2018) (holding that the Eleventh Amendment did not bar the expunging of a record of sexual assault discipline from a university's files); *Johnson v. W. State Colo.*

---

[5]  Because the court is dismissing all of plaintiffs' claims on other grounds, this issue is arguably irrelevant. Nonetheless, some of the claims are being dismissed without prejudice, and the court's reasoning would be applicable to any subsequent motion to dismiss, as well.  Thus, the court addresses it.

*Univ.*, 71 F. Supp. 3d 1217, 1230 (D. Colo. 2014) ("[A] request to expunge an academic record is a request for prospective relief."). Thus, the court concludes that plaintiffs' claims for injunctive relief fall within the *Ex parte Young* exception to the Eleventh Amendment. Plaintiffs' claims against individual defendants in their official capacities survive the Rule 12(b)(1) motion.

**C.      Motions to Dismiss for Failure to State A Claim**

Defendants also have filed motions to dismiss for failure to state a claim. The arguments defendants raise in their motions to dismiss for failure to state a claim are multi-faceted. In broad terms, their first argument is that plaintiffs' due process and Title IX claims are time-barred.

Second, defendants also argue that each plaintiff's due process claims fail to state a claim for relief because he fails to allege a recognized liberty or property interest and because, in any event, he received notice and an opportunity to be heard, and thus, he received all the process he was due. Even if he could overcome these hurdles, defendants argue that all the individual defendants are entitled to qualified immunity. The qualified immunity argument is based on defendants' assertion that it is not clearly established that "a trial-like proceeding is necessary for student conduct hearings." (Dkt. No. 19 at 20, -523 case.)

Third, defendants argue that each plaintiff has failed to allege any action by certain individual defendants and thus they cannot be liable for purposes of any claims. As to other individual defendants, they claim that they should be dismissed because the allegations against them are simply that they either believed the accuser's version of events over plaintiff's or reached an outcome with which plaintiff disagrees.

Fourth and finally, they argue that Virginia's law of associations does not apply in this context.

### 1. Statute of Limitations

The parties disagree over the threshold issue of whether the court can even consider a statute of limitations defense—an affirmative defense—on a motion to dismiss. The Fourth Circuit has explained that, where all facts necessary to show the time bar clearly appear "on the face of the complaint," then a limitations defense appears on the face of the complaint and may be addressed as part of a motion to dismiss. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464, (4th Cir. 2007). In these cases, the court concludes that the facts necessary to address the defense are contained on the face of each complaint. Thus, the court will consider the arguments based on a limitations defense.

### a. Timeliness of Due Process Claims

Turning first to the due process claims, defendants argue that the due process claims of John, James, and Jacob are all barred by the applicable limitations period.[6] On this issue, the parties agree that the due process claims are subject to a two-year statute of limitations, because Section 1983 borrows the forum state's personal injury limitations period and, in Virginia, that is two years. *Owens v. Baltimore City State Atty. Office*, 767 F.3d 379, 388 (4th Cir. 2014); *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (explaining that the statute of limitations for § 1983 claims is the state limitations period for personal injury actions); Va. Code § 8.01-243(A) (setting forth a two-year limitations period for personal injury claims). The more critical question for the due process claims, though, is when the cause of action accrues.

---

[6] Defendants do not argue that Joseph's due process claims (in the -523 case) are time-barred.

The parties agree that the time of accrual is governed by federal law. *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). "Under federal law, a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id.*

The parties' briefing discusses at length *Delaware State College v. Ricks*, 449 U.S. 250 (1980). *Ricks*, a Title VII case, held that the limitations period for a professor who was denied tenure began running at the time tenure was denied and not when the professor's terminal contract expired a year later. As the *Ricks* Court explained, "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Id.* at 248.

The Court also rejected the argument that the cause of action accrual date should be when his grievance was denied. Much like the plaintiffs argue here, the argument was made in *Ricks* that the initial decision was only an "expression of intent that did not become final until the grievance was denied" because the initial decision letter "explicitly held out to Ricks the possibility that he would receive tenure if the Board sustained his grievance." *Id.* at 261. The Court rejected that argument. It reasoned that "entertaining a grievance . . . does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." *Id.* Moreover, the court noted its prior holdings "that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Id.*

Plaintiffs argue that *Ricks* and most of its progeny are Title VII cases, and so this case is not governed by *Ricks*. Plaintiffs further assert that even if the principles in *Ricks* apply, the case

here is distinguishable on two additional grounds: (1) unlike *Ricks*, the effects of the decision were not "clearly known" at the time each plaintiff received first notice of responsibility (mostly because Virginia Tech's handbook itself says the decision can be appealed and the sanctions will not be imposed until the decision on appeal); and (2) procedural flaws in the appeal itself, as well as VT's compliance with the state statute requiring notations on plaintiffs' transcripts, are additional violations giving rise to a continuing violation such that the entirety of the disciplinary process is brought within the limitations period.

The court concludes that this case is governed by *Ricks* and that the plaintiffs have not sufficiently distinguished *Ricks*. The fact that the sanction is not immediately implemented is no different than the denial of tenure in *Ricks*, where the defendant remained employed while he was able to pursue his grievance, but then later his contract was terminated. Likewise, the argument that the effects were not "clearly known" at the time of the initial decision is not correct, either. *Ricks* and other cases cited by defendants hold that the mere fact that there is an administrative appeal process does not negate the fact that the initial decision gives the plaintiff notice of his claim.

Certainly there are a number of federal courts that, in similar circumstances, have found the initial decision to be the accrual date, regardless of the existence of an appeal. For example, in *Tolliver v. Prairie View A&M University*, No. H-18-1192, 2018 WL 4701571, at *4 (S.D. Tex. Oct. 1, 2018), a student was ordered expelled as a result of disciplinary proceedings. An appeal was filed with the university, but there was no response. The court held that his Title IX claim accrued when he learned of his expulsion, and the appeal did not affect it.

Similarly, in *Endres v. Northeast Ohio Medical University*, No. 5:17cv2408, 2018 WL 4002613, at *16–17 (N.D. Ohio Aug. 22, 2018), a student was expelled for cheating and was

notified of that decision on October 22, 2015. In the letter notifying him, he was given three options, including an opportunity to "request an appeal based upon new information or on a defect or irregularity in the CAPP proceedings," language very similar to the notification plaintiffs here received. The student appealed, a new hearing was held, and then a notice dated November 19, 2015, "reiterated his dismissal." He alleged both that the underlying process and the appeal process violated his due process rights. Despite this, the court concluded that the claim in its entirety accrued upon his initial notification on October 22, 2015. Thus, his complaint, filed on November 16, 2017, was untimely.

Also similar is the case of *Datto v. Harrison*, 664 F. Supp. 2d 472 (E.D. Pa. 2009). There, a medical school student was dismissed from the M.D./Ph.D. program, and he was informed of that dismissal in a May 31, 2005 letter. The dismissal was subsequently upheld on appeal and communicated to him in July. He was then denied reinstatement to the program in October 2006, which he challenged as a separate discriminatory action.

The court first reasoned that any claim regarding the dismissal accrued when first communicated to him, on May 31, 2005. The court noted that the letter was "not equivocal" in its language and described his current status as "officially dismissed." 664 F. Supp. 2d at 485.

As to his reinstatement, the court held that could be challenged as a second discrete action (primarily because he had been informed that if he met three conditions he could be reinstated; he claims he met those conditions; and the school refused to reinstate him). The court found that claim timely, but it flatly rejected the plaintiff's assertion that the failure to reinstate was part of a continuing violation that would also render timely a challenge to the earlier dismissal.

Lastly, the case of *Siblerud v. Colorado State Board of Agriculture*, 896 F. Supp. 1506 (D. Colo. 1995), is instructive. In *Siblerud*, a graduate student was dismissed for a disciplinary violation. The court held that the cause of action accrued on the date the student received a letter from the school informing him of the dismissal. He subsequently engaged in a grievance process, but the court relied on *Ricks* to find that was a remedy for dismissal, not an opportunity to influence the decision. So, the court concluded that his claim accrued on the original date informing him, not the date that his grievance process concluded. Again, the court there looked to the letter giving notice of the decision itself and found it "clear and absolute" because it informed him that he had been dismissed. 896 F. Supp. at 1511.

Plaintiffs contend that their cases are distinguishable from *Datto* and *Siblerud* in that the letters or notices there were clear regarding the decision and its immediacy: *Datto* described the notification as "not equivocal," and *Siblerud* described the letter giving notice of the decision as "clear and absolute." Plaintiffs argue that their notices, by contrast, not only advise of the opportunity to appeal, but also indicate that Virginia Tech would await the outcome of any appeal before sanctions take effect. They also point to the Virginia Tech's handbook, the Hokie Handbook, attached to plaintiffs' opposition to the motions to dismiss, which states that "[a]n appeal is defined as a written request for review of the original case. The burden is on the appealing student or organization to demonstrate why the finding or sanction should be altered. Sanctions do not typically take effect until the appellate Officer decision is final." (Hokie Handbook 13, Dkt. No. 33-1 at 4.)

*Ricks*, however, addressed and rejected similar arguments. It noted that the existence of a grievance (here, an appeal) procedure does not mean that the initial decision was not made. And

as to when the sanction takes effect, that is no different than the professor in *Ricks* being terminated one year after the initial decision to deny tenure.

Moreover, a brief review of the notices addressed to plaintiffs show that they, too, fall squarely within the "not equivocal" category. For example, in John's case (-170 case), the document informs him of the charges of which he was found responsible and says that "the following sanctions *are* imposed," using the present tense. (Mot. Dismiss Ex. A, Dkt. No. 2-2 (emphasis added).) It then states: "This is a notice that you are permanently separated from the University." (*Id.*) The letter also makes his dismissal effective January 24, 2016, months *before* the notice was sent. It informs John that he has the opportunity to appeal the decision, but nothing about that letter suggests that the decision was tentative.

The other letters are similar in content and form. In James's case, the exact same language quoted in the preceding paragraph appears, although the letter also states that the sanction "will become effective at the conclusion of the appeal process." (*See* Dkt. No. 34-1 (James, -320 case); *see also* Dkt. No. 22-1 (Jack, -492 case) (referring to "final outcomes" of the conduct matter and making the decision effective as of the "final decision," which is a reference to the hearing decision, but also giving an opportunity to appeal); Dkt. No. 19-1 (Joseph, -523 case) (imposing sanctions in the present tense and imposing the suspension effective upon the conclusion of the Spring 2017 semester, which was days away).)

Plaintiffs' proposed amendment to their complaints would include the allegation that "[t]he decision is not final until the appeal is decided." To the extent that is a factual allegation and not a legal conclusion, it cannot control the accrual inquiry. The question is not whether, on appeal, the decision might be reversed. Of course, as a factual matter, it could; just as in *Ricks*, the plaintiff's grievance could have been upheld and his denial of tenure rescinded. The question

is when each plaintiff had notice of the due process violations against him.  For the reasons already discussed, each plaintiff had notice of any due process violations in the initial hearing and any injury occurred when plaintiff was notified of the initial decision.  Accordingly, the court concludes that the limitations period for plaintiffs' claims began, and the claim accrued, at the time of the initial decision for each of them, and all plaintiffs (except Joseph) are barred from raising procedural due process violations that occurred prior to that time.

In order to salvage their claims, plaintiffs also advance a "continuing violation" argument.  Specifically, they contend that they have alleged continuing violations due to additional allegations challenging the process they received on appeal and the notation appearing on their transcripts.

The court has considered this argument but does not find it persuasive.  The continuing violation doctrine applies where there is a pattern of discriminatory acts, the latter of which occurs within the limitations period.  In those circumstances, a court may reach back beyond the limitations period to consider other discriminatory acts that would otherwise be untimely.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002).  In the court's view, *Ricks* again controls and forecloses this argument.  To use a "continuing violation" theory in order to allow an appeal process to render a challenge to the initial decision timely would circumvent and frustrate the holding of *Ricks* and be inconsistent with its reasoning.  It would become the exception that swallows the rule.

However, the court's conclusion that the date of the appellate decision cannot be used to challenge defects in the initial hearing process does not answer the question of whether plaintiffs may bring claims based on defects in the appeal process itself.  The court concludes that, to the extent there were separate violations in the appeal process itself, sufficient to state a due process

violation, then they can give rise to a separate due process violation that accrues on the date the appeal was denied. In *Endres*, the court held held that claims of due process violations in both the initial decisional process and the appeal process accrued at the time of the initial decision, 2018 WL 4002613, at *6–7, but it did so in part because the plaintiff alleged that the appellate decision merely "reiterated" his dismissal. Unlike the *Endres* court, this court cannot find that a cause of action accrued *before* an alleged violation occurred. So, to the extent any plaintiff alleges any separate and discrete violations *after* the notice of decision, but within two years of the filing of their respective complaints, the court will not dismiss those claims as time-barred. *See Datto*, 664 F. Supp. 2d at 494–95 (allowing a separate failure to reinstate claim because it occurred within the limitations window).

Plaintiffs argued at the hearing that they are also seeking to rely on Virginia Tech's inclusion of a notation on a student's transcript if he or she was expelled or suspended for sexual misconduct, or withdrew while under investigation for sexual misconduct, as required by a Virginia statute. That allegation is not in the original complaints, but appears in the proposed amended complaints. The court will deny leave to amend to add those allegations because they are futile. Even with those facts, the transcript notation cannot give rise to a continuing violation or constitute its own violation. The transcript notation is the consequence, or "effect" of the decision, not a separate violation. *See Ricks*, 449 U.S. at 258 (explaining that limitations period accrued at the time the decision was made and communicated to the plaintiff, "even though one of the effects of the" decision "did not occur until later"). To allow the notation either as a separate claim or to use it to render otherwise untimely claims timely, then, is not appropriate. *Id.* For the foregoing reasons, the court concludes that all of plaintiffs' due process claims are

time-barred, except Joseph's claims in -523 and except any claims based on flaws in the appeals process.[7]

Plaintiffs also contend that they are entitled to equitable tolling. The court disagrees. To be entitled to equitable tolling, a plaintiff has to establish "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim; [and] (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence. *Barnes v. West, Inc.*, 243 F. Supp. 2d 559, 563 (E.D. Va. 2003) (citing *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995)). Each of the four complaints in this matter asserts that the due process allegations in the investigatory or initial hearing phases were raised as part of the plaintiff's appeal. This belies any claim that the plaintiffs "failed to discover those facts within the statutory period." *Cf. id.* Equitable tolling is not available here.

### b. Timeliness of Title IX Claims

With regard to defendants' argument that plaintiffs' Title IX claims are also time-barred, there are two issues to be addressed. The first is the time of accrual; the second is the applicable limitations period. As for the time of accrual, the court adopts the same reasoning and conclusion that it reached with regard to plaintiff's due process claims. Thus, Title IX claims that are based on the initial disciplinary process accrued upon each plaintiff's receipt of the notice of decision.

As for the limitations period itself, "Title IX does not contain an express statute of limitations . . . ." *Doe v. Bd. of Educ. of Prince George's Cty.*, 888 F. Supp. 2d 659, 663 (D. Md. 2012) (quoting *Wilmink v. Kanawha Cty. Bd. of Educ.*, 214 F. App'x 294, 296 n.2 (4th Cir.

---

[7] Nonetheless, claims based on flaws in the appeal process are subject to dismissal without prejudice for failing to state a claim, as discussed in Section II.C.3.d *infra*.

2007)). The court should instead apply "the most closely analogous statute of limitations under state law." *Reed v. United Transp. Union*, 488 U.S. 319, 323–24 (1989); *Wolsky v. Med. Coll. of Hampton Roads*, 1 F.3d 222, 224 (4th Cir. 1993).

Plaintiffs argue that the most closely analogous period is Virginia's personal injury limitations period, also applicable to the Section 1983 claims. Based on this, plaintiffs argue that there is a two-year limitations period for their Title IX claims. Defendants, though, contend that the court should look to Virginia's Human Rights Act (VHRA), Virginia Code § 2.2-3901 *et seq.*, and apply its limitations period, which is 300 days. They posit that gender discrimination cases asserting a claim by a disciplined student should be governed by a different limitations period than sexual misconduct cases and that the VHRA is more analogous to such claims than a personal injury claim.

For all but Joseph (-523 case), this first issue matters not, given the court's earlier conclusion regarding accrual, which applies with equal force to the Title IX claims. Specifically, even if the court agrees with plaintiffs that a two-year limitations period applies, given the court's finding that the cause of action accrues at the time of the initial decision, their complaints were filed more than two years after accrual and are time-barred insofar as they claim discrimination in the initial hearing process and decision.

Joseph (-523 case) is positioned differently. He filed his complaint more than 300 days, but less than two years, after the first notice of decision. So, if it is a two-year limitations period, his claim will survive (as do his Section 1983 claims). If the limitations period is 300 days, then his claim does not survive even if the court were to use the accrual date urged by plaintiff: the date his appeal was denied. His appeal was denied on June 14, 2017, and he did not file suit until October 23, 2018.

The parties' opposing views concerning the proper limitations period on the Title IX claims both find support in some authority, and there is no published Fourth Circuit authority directly on point.

For their contention that the Title IX limitations period is the same two-year limitations period that governs personal injury claims, plaintiffs point to general statements in Fourth Circuit Title IX cases, none of which were outside of the harassment or abuse context, and to out-of-circuit authority, but almost exclusively in cases where the plaintiff was sexually harassed or abused, not in cases where the claim was discrimination. (Dkt. Resp. Opp'n Mot. Dismiss 8–9, Dkt. No. 33.) Of the out-of-circuit cases cited by plaintiffs, two were student discipline cases: *Curto v. Edmundson*, 392 F.3d 502 (2d Cir. 2004), and *Egerdahl v. Hibbing Community College*, 72 F. 3d 615, 618 (8th Cir. 1995). So, there is some out-of-circuit authority supporting adoption of a state's personal injury limitations period even in the context of a Title IX gender discrimination claim arising from student discipline.

Defendants acknowledge the many cases that apply a state's personal injury limitation period in Title IX cases but argue that those cases are different because they involved claims of harassment or abuse by the plaintiffs. Here, by contrast, plaintiffs' Title IX claims are discrimination claims but do not involve any abuse. For support, defendants rely heavily on an unpublished Fourth Circuit decision and (to a lesser degree) two district court decisions that cite it. Specifically, in *Moore v. Greenwood Sch. Dist. No. 52*, 195 F. App'x 140 (4th Cir. 2006) (per curiam), the Fourth Circuit held that the South Carolina's State Human Affairs Law, S.C. Code Ann. § 1-13-80(A)(1) (2005), was the most analogous statute for a Title IX claim brought by an employee who alleged his employer retaliated against him for raising Title IX concerns. 195 F. App'x at 143. The court applied that law's limitations period, which was 300 days, instead of

the longer limitations period for personal injury actions because it found it to be the most analogous state statute. The court in *Doe v. Board of Education of Prince George's County*, 888 F. Supp. 2d 659, 663–64 (D. Md. 2012), discussed *Moore*, but ultimately concluded that it did not directly control the case before it. Specifically, the *Doe* court concluded that the personal injury limitations period applied to the claim before it—which was a Title IX harassment claim—and that *Moore* was factually distinguishable because it involved a retaliation claim. *See also Isioye v. Coastal Carolina Univ.*, No. 4:17-cv-3484, 2018 WL 6682795, at *4 (D.S.C. Nov. 30, 2018) (reaching same conclusion and so applying the personal injury limitations period to the Title IX harassment claim before it).

Defendants' reliance on *Moore*, an unpublished decision not binding on this court, is misplaced. There, the court was dealing with a retaliation claim in the employment context, and found most analogous a state law that prohibited discrimination in employment. Here, by contrast, the court is faced with Title IX discrimination claims brought by students who allege their discipline was the result of sex discrimination. The Virginia Human Rights Act, however, would not govern the claim in this case, and that act is not analogous to Title IX in terms of cases arising in the context of higher education. It provides a cause of action only in the context of employment claims. *See* Va. Code § 2.2-3903.

As the Fourth Circuit recently explained, a state statute is analogous when it provides 'the same rights and remedies" as the federal law. *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017). In *Semenova*, for example, the court determined that a claim of disability discrimination in public services should be governed by Maryland's personal injury limitations period instead of a Maryland law prohibiting disability discrimination. In part, that was because the Maryland law recognized causes of action only in limited circumstances (disability housing

discrimination and disability employment discrimination), and it did not provide a cause of action for disability discrimination in the provision of public services, which was the claim before the *Semenova* court. That analysis is apt here. As noted, the Virginia statute, allowing claims only for employment-related discrimination, simply does not provide the same rights and remedies as Title IX.

Moreover, the Fourth Circuit also applied the same two-year limitations period to *discrimination* claims under 42 U.S.C. § 1981,[8] in *James v. Circuit City Stores*, 370 F.3d 417 (4th Cir. 2004). This significantly undermines defendants' position that discrimination is somehow different from harassment. As the *James* court explained, "'discrimination . . . is a fundamental injury to the individual rights of a person'"; thus, "the state statute applicable to personal injury claims should be borrowed." *James*, 370 F.3d at 420 (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661 (1987)). The reasoning in *James*, in particular, does not support treating a Title IX discrimination claim as so different from a Title IX harassment claim that it would borrow a different state limitations period. As *James* explained, discrimination is a type of personal injury.

For all of the foregoing reasons, this court will apply to plaintiffs' Title IX claims Virginia's general statute of limitations for personal injury claims—two years.

In light of the court's ruling, the court will dismiss as time-barred the due process claims and the Title IX claims of plaintiffs John (-170 case), James (-320 case), and Jack (-492 case), at least insofar as they are premised on events that occurred prior to the notice of decision in each.

---

[8] There is a federal four-year statute of limitations, 28 U.S.C. § 1658, applicable to certain types of Section 1981 claims (and other federal claims) if the claim arises "under an Act of Congress enacted after [December 1, 1990]." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–83 (2004). Title IX predates Section 1658, and so that four-year limitations period is not applicable to Title IX claims. *Martin v. Clemson Univ.*, 654 F. Supp. 2d 410, 429 (D.S.C. 2009)).

To the extent violations alleged in the appeal process are timely, the court addresses those briefly below.

Joseph's due process claims and Title IX claims, however, will not be dismissed on limitations grounds. Thus, the court will turn to the other grounds for dismissal raised by defendants as to those claims. It addresses first, though, the remaining claim of the other three plaintiffs: the claim that Virginia Tech's discipline of them violated Virginia's law of associations.

### 2. Claims (and Proposed Claims) Pursuant to Virginia's Law of Associations

In Count Six of the two later-filed cases (Jack (-492 case) and Joseph (-523 case)), the plaintiffs assert a claim that defendants violated Virginia's law of associations. As described in *Gottlieb v. Econ. Stores, Inc.*, Virginia recognizes that corporate entities are generally permitted to expel their shareholders or members but not for arbitrary or bad faith reasons. 199 Va. 848, 855–57 (Va. 1958). Defendants seek dismissal on the grounds that this type of claim does not apply to a university and its students. They also argue that the reasons given here cannot, as a matter of law, be deemed "arbitrary" or taken in "bad faith."

The court does not reach the second issue because it agrees with defendants as to the first. There is at least one Virginia circuit court decision that appears to recognize that the law of associations could be applicable to universities. *Helton v. Univ. of Richmond*, 2 Va. Cir. 254 (Richmond Cir. Ct. 1985). Plaintiffs cite to *Helton* and argue, based on the text of the statute, that the law of associations should be applied in this context.

The court, however, agrees with the reasoning and the approach followed in *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 590–91 (E.D. Va. 2018). There, the court discussed the issue in detail, but it ultimately declined to recognize such a cause of action in this context

because it would expand Virginia's law of associations beyond what Virginia's Court of Appeals and Supreme Court have ever permitted. As the judge did there, this court notes that there would be significant public policy implications from recognizing such a claim in this context. It would be inappropriate for this federal court to give such an expansive reading to Virginia law in that fashion, given the dearth of authority from Virginia's courts on the issue. Thus, the court declines to conclude that a university is an association and that its students are the members under Virginia's law of associations. Accordingly, the court will dismiss with prejudice Counts VI in Jack's (-492 case) and Joseph's (-523 case) cases, the two later-filed cases. It will deny as futile plaintiffs' motion to amend to add that claim in the two earlier-filed cases, John's (-170 case) and James's (-320 case).

### 3. Joseph's Due Process Claims

#### a. Factual Background of Joseph's claims

Having found that Joseph's claims are timely, the court turns to defendants' other arguments for dismissal. These include that he has failed to adequately allege a constitutionally protected property or liberty interest and that he was given all the process he was due, as well as an assertion by the individual defendants that they are entitled to qualified immunity.

Resolving these issues require a recitation of the facts underlying Joseph's claims, as set forth in his complaint. (*See generally* Compl. ¶¶ 10–54, Dkt. No. 1; *see also* Proposed Am. Compl. ¶¶ 10–57, Dkt. No. 32-1.)

Joseph Doe alleges that he met June Roe on their first night at Virginia Tech as freshmen and they had several consensual sexual encounters during the early weeks of their first semester, the fall semester of 2015. They also were in the VT Snow Club together and so would see each other regularly at and after Snow Club meetings. The weekend of February 11, 2017, both

Joseph and June participated in an overnight skiing and snowboarding event at Snowshoe Mountain, West Virginia, coordinated by the Snow Club. Along with several other friends, they shared the same bedroom in a rented house. The day of February 11, 2017, Joseph, June, Female Witness No. 1, and Male Witness No. 2 spent the day snowboarding together. Both Joseph and June drank alcoholic beverages over the course of the day, although when asked later, neither could state with certainty how much they had consumed. After returning to the house, Joseph and Male Witness No. 2 helped June take off her snow gear, and she got into bed and went to sleep. Female Witness No. 1 and Male Witness No. 2 left to dine out.

June woke up twenty minutes later and asked Joseph to fix her some food, which he did. She ate a few bites and then went back to sleep. Joseph continued eating his food while on the same bed as June as there was no other place to sit. Two other people were asleep in another bed in the room at the time. June woke up and began talking with Joseph, started kissing him, and pressed herself against him. She then asked him to cuddle with her in the bed and placed his hand down her pants and on her genitals. At her request and encouragement, he digitally penetrated her. She then asked him to have vaginal intercourse, but he refused. The two witnesses returned from picking up food, and then the four left separately to attend different parties. Joseph did not see June again that night or the next morning.

Approximately one month later, on March 14, 2017, Joseph was informed by a letter from VT's Title IX Investigator & Gender-Based Violence Prevention Specialist, defendant Katie Reardon Polidoro, that a report had been made alleging his involvement in an incident, although the letter did not identify the date or location of the alleged incident or the alleged policy violations. The letter informed him that he was to have no further contact with June.

Virginia Tech investigated an allegation that Joseph assaulted June by digitally penetrating her without her consent. The investigation, conducted by Polidoro, lasted a month and included interviews with eight witnesses. According to the complaint, June said she had the "most vague image of being in the same room with [Joseph] and although I remember zero details of [the incident] still, I remember having an eerie feeling about it." (Compl. ¶ 35.) She said the eerie feeling was "triggered" the next morning when talking to Female Witness No. 1. (*Id.*)

Joseph was notified on May 8, 2017, that the University wanted to set a conduct hearing for May 12, 2017, almost immediately after his final exams concluded on May 10, 2017. On May 10, 2017, he was notified the hearing would be rescheduled for May 15, 2017.

Joseph and June both were present at the hearing, with June present via Skype, and Joseph present in person, along with two hearing officers, Joseph's mother, Roe's advocate Katie Mey, and Polidoro. During the hearing, Polidoro outlined the steps of her investigation. Joseph and June were permitted to ask questions of Polidoro, but they were limited to asking for clarification, not to prove a point or address a discrepancy, and the questions had to be directed to the two hearing officers, who would then rephrase the question to Polidoro.

Joseph complains that he was not able to confront June regarding her level of intoxication and that one of the hearing officers discouraged him from asking any questions of her because of her lack of memory of the encounter. Joseph also was not permitted to question Female Witness No. 1 or any other witness. The hearing lasted four and a half hours, and Joseph and June were told they would receive a decision within the next few days.

The hearing officers used a preponderance of the evidence standard, but Joseph asserts that they should have used, at least, a clear and convincing evidence standard because the alleged offenses were quasi-criminal in nature.

The day after the hearing, Joseph received a letter, signed by both hearing officers, informing him that he had been found responsible for three violations of the Code: (1) Sexual Violence – Rape; (2) Sexual Violence – Sexual Assault; and (3) Alcoholic Beverage policies. As Joseph states, the finding "was based on their conclusion that [Joseph] had digitally penetrated [June] without her consent, even though June admitted to having no memory of the event and Joseph explained that the act was initiated by Roe. There was no evidence to the contrary." Joseph was suspended from the University until the fall semester of 2019.

He appealed, emphasizing the numerous due process violations he alleges again in this suit and providing new evidence to further clear his name. He also argued that the sanction was unduly harsh. On June 14, 2017, he received a letter from defendant Keene denying his appeal, which was the final decision in the matter.

He filed his complaint in this case on October 23, 2018.

### b. Protected liberty interest and/or property interest

In order to be entitled to constitutional due process, Joseph must first allege facts sufficient to establish either a protected property interest or liberty interest. In a different case, the court has previously held that a public university student does not have a protected liberty interest. *Doe v. Alger*, 175 F. Supp. 3d 646, 657–58 (W.D. Va. 2016). The court continues to believe that its analysis in *Alger* was correct, and plaintiffs have not provided anything that convinces the court it should reach a different conclusion here. Accordingly, for the same

reasons set forth in that decision, the court concludes that Joseph does not have a protected liberty interest.

With regard to a property interest, it is true that the court found in *Alger* that the plaintiff had properly set forth facts alleging a protected property interest. As the court explained there, the constitution cannot be the source of a protected property right; instead, there must be "a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). This claim of entitlement may arise from state statutes, contracts, regulations, or policies. *Id*. at 576–78. Similar to the plaintiff in *Alger*, Joseph does not allege that he has a right arising from a state statute. Thus, the court turns to whether Joseph's complaint adequately alleges a contract, regulation, or policy that created a "claim of entitlement."

As the court explained in *Alger*:

> The Supreme Court's decision in *Perry v. Sindermann*, 408 U.S. 593 (1972), is instructive on this issue, since rules and understandings were asserted as the basis for a property interest there. In *Perry*, decided the same day as *Roth*, the Court addressed whether a public junior college professor had a property right in continued employment where no state statute existed to provide that right and his contract did not contain such a right. *Id.* at 599. The Court held that the lack of a statute and a contract provision did not necessarily mean there was no property right. There, the professor's allegation that a de facto tenure policy existed arising from rules and understandings officially promulgated and fostered by the college could be sufficient to state a property interest. *Id.* at 599–600. While noting that "mere subjective 'expectancy'" is not protected by due process, the Court nonetheless held that the professor "must be given an opportunity to prove the legitimacy of his claim of entitlement in light of the policies and practices of the institution." *Id.* at 603 (internal quotation marks and citation omitted). This same rule has been applied in other contexts as well. *See, e.g.*, *Richardson v. Town of Eastover*, 922 F.2d 1152, 1157–58 (4th Cir. 1991) (noting that "mutual expectations may create an entitlement in a license," especially where the license is renewable periodically simply on the payment of a fee and without additional action).

175 F. Supp. 3d at 657–58.

On a motion to dismiss, this court must take as true all well-pleaded facts in the complaint. In *Alger*, the court found that the plaintiff had alleged enough to survive a motion to dismiss where the plaintiff alleged that his university had a "system of expelling, suspending, or dismissing students only after a finding of cause" and pointed to a student's rights policy indicating as much. As in *Perry*, the court in *Alger* did not hold at that time that Doe had "any legitimate claim of entitlement to [continued enrollment]," (quoting *Perry*, 408 U.S. at 602 n.7), but it gave him the opportunity to prove the legitimacy of his claim to a property right "in light of the policies and practices of the institution," *id.* (quoting *Perry*, 408 U.S. at 603).

Here, even those sparse allegations present in *Alger* are missing. Nowhere does Doe allege that Virginia Tech only expels or suspends students for cause or point to other facts supporting a "legitimate claim of entitlement." Thus, the court concludes that he has failed adequately to allege a property interest.

### c. Allegations of Due Process Violations At Investigatory/Hearing Phase

Even if he had adequately alleged a constitutionally protected interest, another ground exists for dismissal of Joseph's due process claims, as well—he has failed to allege a violation of any due process rights.

At its core, due process requires fair notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Beyond those threshold requirements, though, due process is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Where a student faces expulsion, this court has applied, and the Fourth Circuit has embraced, the following due process standard:

The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the [University]. The nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires something more than an informal interview with an administrative authority of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the . . . administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required. Such a hearing, with the attending publicity and disturbance of college activities might be detrimental to the college's educational atmosphere and impracticable to carry out. Nevertheless, the rudiments of an adversary proceeding may be preserved without encroaching upon the interests of the college.

*Cobb v. Rector & Visitors of Univ. of Va.*, 69 F. Supp. 2d 815, 828–29 (W.D. Va. 1999) (alteration and omissions in original) (quoting *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158–59 (5th Cir. 1961)); *see also Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 74 (4th Cir. 1983) ("Although *Dixon* was decided more than twenty years ago, its summary of minimum due process requirements for disciplinary hearings in an academic setting is still accurate today."). In *Dixon*, the court said that due process required an opportunity for the student to present his own defense and to produce either oral testimony or written affidavits of witnesses in his behalf. 294 F.2d at 159.

Applying this standard here, the court concludes that Joseph does not allege sufficient facts to state a procedural due process violation. With regard to the initial hearing, Joseph alleges that he was given notice of the hearing and he attended the hearing, which lasted four and a half hours. He was able to ask questions of the investigator, was able to make a statement and set forth his version of the events, and was permitted to have an advocate with him. Although he criticizes the procedure because it limited his questioning of June and because the decision was made based on a preponderance of the evidence standard, he does not point to any authority for

the proposition that a higher standard than preponderance of the evidence is constitutionally required in this setting or that there should be a full and unfettered right to cross-examine witnesses. To the contrary, the Fourth Circuit has expressly stated—in a case that the court treated as a disciplinary/misconduct case, rather than an academic one requiring lesser protections—that "trial-like proceedings" are *not* required to pass constitutional muster. *Butler v. Rector & Bd. of Visitors of Coll. of Wm. & Mary*, 121 F. App'x 515, 519–520 & n.2 (4th Cir. 2005); *Dixon*, 294 F.2d at 159 (holding that "a hearing which gives [the university] an opportunity to hear both sides in considerable detail" as to a disciplinary charge sufficiently protects due process rights; "a full-dress judicial hearing, with the right to cross-examine witnesses" is not required); *Henson v. Honor Comm. of U. Va.*, 719 F.2d 69, 74 (4th Cir. 1983) (adopting standard set forth in *Dixon*); *Doe v. Loh*, No. PX-16-3314, 2018 WL 1535495, at *7 (D. Md. Mar. 29, 2018) ("It is well settled that the accused is not entitled to 'trial-like' rights of confrontation or cross-examination at disciplinary proceedings."). Thus, the allegations in this case do not adequately state a violation of due process protections.

Joseph's remaining allegations are basically contentions that the result reached was erroneous and the discipline imposed was unduly harsh. Both of those things may be true. Virginia Tech certainly reached an erroneous result if the allegations in his complaint are credited. Nonetheless, due process does not require any particular result from such proceedings but simply that notice and an opportunity to be heard, appropriate to the context, are given. *E.g.*, *Butler*, 121 F. App'x at 520 (explaining that, even if the university was wrong to believe the charges against plaintiff and to disbelieve her, that "does not rise to the level of a procedural due process violation").

For the foregoing reasons, Joseph has failed to state a procedural due process claim, and so his claims will be dismissed without prejudice. *Cf. Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 623 (4th Cir. 2015).

### d. Allegations of Due Process Violations At Appeal Stage (All Four Plaintiffs)

The court addresses separately any claim by Joseph that there was a due process violation in the appeals process itself, as well as any claims by the other three plaintiffs of due process violations in the appeal process, to the extent that any such claims would be timely under the court's analysis above. Having considered the allegations in all four complaints, however, the court concludes that none of the plaintiffs have adequately alleged violations in the appeal process. It is true that, in its prior *Alger* case, the court recognized a due process violation in the appeals process itself. The facts alleged here, however, are not similar to the *Alger* case, where the court held a procedural due process violation had been adequately alleged with regard to the appeal procedure.

There, the initial hearing had found the plaintiff Doe not responsible for sexual misconduct. Then, the appeal panel reversed that decision, and it did so by considering new evidence without giving Doe a meaningful opportunity to challenge that evidence and without holding a hearing at which Doe could participate. Here, in each of these four cases, the initial hearing decision was upheld, and Joseph has not identified any of the similar kinds of errors that were alleged in the *Alger* complaint. Indeed, even in his proposed amended complaint, he simply conclusorily asserts that he was denied a "meaningful opportunity to challenge the finding of responsibility," but he asserts few facts pointing out any deficiencies in the appeal process.

Accordingly, to the extent any claims of due process violations in the appeal process are not time-barred, they will be dismissed without prejudice for failure to state a claim.

### 4. Joseph's Title IX Claim

Title IX provides that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a). Here, it appears that plaintiffs are asserting what is called an "erroneous outcome" type of claim, arguing that the defects in the disciplinary process are motivated by gender bias. *E.g.*, *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 764 (D. Md. 2015).

As the *Salisbury University* court explained:

> To assess whether a school's disciplinary proceedings produced an erroneous outcome in violation of Title IX, courts typically apply a framework first introduced in *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). *See, e.g., Mallory v. Ohio Univ.*, 76 Fed. Appx. 634, 638–41 (6th Cir. 2003) (citing favorably to *Yusuf*); *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 132 F.3d 949, 961–62 (4th Cir.1997) (same), *rev'd en banc on other grounds,* 169 F.3d 820 (4th Cir.1999); *Doe v. Washington & Lee Univ.*, No. 6:14–CV–00052, 2015 WL 4647996, at *9–10 (W.D.Va. Aug. 5, 2015) (same). In an erroneous outcome case, "the claim is that the plaintiff was innocent and wrongly found to have committed an offense" on the basis of gender bias. *Yusuf,* 35 F.3d at 715.
>
> To state a claim for erroneous outcome discrimination, a plaintiff must allege (1) "a procedurally or otherwise flawed proceeding"; (2) "that has led to an adverse and erroneous outcome"; and (3) "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* To satisfy the third element, a plaintiff must do more than merely rely on "a conclusory allegation of gender discrimination . . . ." *Id.* Sufficiently particularized allegations of gender discrimination "might include, *inter alia,* statements by members of the disciplinary tribunal, statements by pertinent university officials, or

patterns of decision-making that also tend to show the influence of gender." *Id.*

*Salisbury Univ.*, 123 F. Supp. 3d at 765–66.

The court assumes, for purposes of this opinion, that Joseph has adequately alleged the first two of the elements for an erroneous outcome claim in his proposed amended complaint. Nonetheless, the court concludes that the complaint is insufficient to plausibly allege the third element. Joseph points to an alleged statement of Shushok, and Shushok is alleged to be a Senior Vice President of Virginia Tech and was the interim Title IX coordinator who received a report about Joseph. But nowhere does his complaint state that Shushok played any role in the decision to discipline Joseph or the appeal of that decision. The remainder of the allegations are conclusory and do not state specific facts. Joseph conclusorily asserts that Virginia Tech officials are more likely to carefully consider a female appellant's appeal than a male's and that appeals rarely result in a reversal of a finding of sexual misconduct, "even when the evidence . . . in favor of the male student is clear." (*Id.* ¶ 52.) Joseph also points to the fact that universities in general were under scrutiny for the allegedly pervasive nature of sexual assault, and there had been several Office of Civil Rights investigations into universities' handling of such assaults. He makes no effort whatsoever to tie those allegations to Virginia Tech specifically, however.

In *Yusuf,* the court held that the plaintiff's allegations were sufficient to state a claim where he alleged procedural irregularities coupled with allegations that "males accused of sexual harassment at Vassar are 'historically and systematically' and 'invariably found guilty, regardless of the evidence, or lack thereof.'" *Id.* (quoting *Yusuf*, 35 F.3d at 716). Notably, though, *Yusuf* was decided before *Iqbal* and *Twombly*, and so it is questionable whether the result would be the same today.

Instead, as other courts have noted, an allegation that males were "invariably found guilty, regardless of the evidence, or lack thereof," without any supporting data or "credible anecdotal references," were "the type of conclusory statements that *Iqbal* and *Twombly* do not allow the court to consider." *Doe v. Univ. Of Mass.-Amherst*, No. 14-cv-30143, 2015 WL 4306521, at *9 (D. Mass. July 14, 2015); *see also Austin v. Univ. of Ore.*, 205 F. Supp. 3d 1214, 1223 (D. Ore. 2016) (collecting authority holding similarly).   The court agrees with that statement.  And as applied here, Josephs' allegations to not adequately rise to the plausible level necessary to state a Title IX claim.  Joseph's Title IX claim will be dismissed without prejudice.

**D.  Plaintiffs' Motions for Leave to Amend**

The court will not discuss plaintiffs' motions for leave to amend at any length.  As has been noted throughout this opinion, even with the additions in the proposed amended complaints, the claims are subject to dismissal for the reasons discussed herein.  Thus, the motions to amend will be denied as futile.

Nonetheless, the court has dismissed some of the claims without prejudice for failure to state a claim.  As to those claims, if plaintiffs want to file a second motion for leave to amend with a second proposed amended complaint in an attempt to remedy those deficiencies, they should do so within 14 days after entry of the accompanying order.

III. CONCLUSION

For the foregoing reasons, the court will deny in part and grant in part grant defendants' motions to dismiss, as discussed herein, and will deny as futile plaintiffs' current motions for leave to amend.  Many of the claims are dismissed with prejudice.  The breach of contract claims are dismissed without prejudice for lack of jurisdiction.  The following claims are dismissed without prejudice for failure to state a claim, and, as to these claims only, the court will allow

plaintiffs, if they wish, to file a second motion seeking leave to amend: (1) due process or Title IX claims by John, James, and Jack premised only on alleged errors in the appeal process, if the decisions were communicated to the plaintiff less than two years before his respective complaint was filed; and (2) Joseph's Title IX and due process claims in their entirety.

An appropriate order will follow.

Entered: August 15, 2019.


/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge