# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### (Roanoke Division)

| | |
|---|---|
| JOSEPH DOE,<br><br>      Plaintiff,<br><br>v.<br><br>VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, TIMOTHY SANDS, FRANK SHUSHOK, JR., KATIE REARDON POLIDORO, FRANCES KEENE, ENNIS MCCRERY AND AARON REISTAD, *employees of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally,*<br><br>      Defendants. | Civil Action No. 7:18-cv-523 |

## AMENDED COMPLAINT

Plaintiff Joseph Doe[1] files this Amended Complaint[2] against Defendants

Virginia Polytechnic Institute and State University, Timothy Sands, Frank

Shushok, Jr., Frances Keene, Katie Reardon Polidoro, Ennis McCrery, and Aaron

---

[1] "Joseph Doe" is not the Plaintiff's real name. Due to the nature of the allegations in this lawsuit, Mr. Doe will promptly move this Court for permission to proceed under a pseudonym to protect his privacy because of fear of retaliation. Moreover, to protect the identity of his accuser, he is identifying her as "June Roe." In using a pseudonym, Mr. Doe relies upon the factors set out in *Co. Doe v. Pub. Citizen*, 74. F.3d 246 (4th Cir. 2014).

[2] This Amended Complaint is filed pursuant to this Court's Memorandum Opinion dated August 15, 2019 (Dkt. 51)

Case 7:18-cv-00523-EKD-RSB   Document 54   Filed 09/12/19   Page 1 of 23   Pageid#: 334

Reistad for gender-based discrimination in violation of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*), violations of his rights under the due process and equal protection requirements of the Fourteenth Amendment to the United States Constitution, the Virginia Constitution, breach of contract, and other state law causes of action. In support of this complaint, Joseph Doe states as follows:

## THE PARTIES AND JURISDICTION

1.      Plaintiff Joseph Doe ("Mr. Doe") is, and at all times relevant to this Complaint has been, a resident of Virginia. Plaintiff was a student at Virginia Polytechnic Institute and State University (the "University" or "Virginia Tech") from the fall semester in 2015 until the spring semester of 2017.

2.      Defendant Virginia Tech is a public land-grant research university with its principal place of business located in the Commonwealth of Virginia.

3.      Defendant Timothy Sands is or was at the pertinent times the President of the University and resides in Virginia.

4.      Defendant Frank Shushok, Jr., is or was at the pertinent times a Senior Assistant Vice President and Interim Title IX Coordinator for the University and resides in Virginia.

5.      Defendant Katie Reardon Polidoro is or was at pertinent times the Title IX Investigator and Gender Based Violence Prevention Specialist for the University and resides in Virginia.

6. Defendant Ennis McCrery is or was at pertinent times a Student Conduct Hearing Agent for the University and resides in Virginia.

7. Defendant Frances Keene is or was at pertinent times Interim Director, Housing and Resident Life Chief of Operations and Deputy to the Senior Associate Vice President for Student Affairs for the University and resides in Virginia.

8. Defendant Aaron Reistad is or was at the pertinent times a Student Conduct Hearing Agent for the University at the time relevant to the allegations in the complaint, he resided in Virginia. He now resides in Ohio.

9. The Court has federal question and supplemental jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because: (i) the federal law claims arise under the United States Constitution, brought pursuant to 42 U.S.C. § 1983, and under the laws of the United States, including Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88; and, (ii) the state law and common law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the United States Constitution.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

10. Mr. Doe enrolled as an undergraduate student at Virginia Tech and matriculated in the fall semester of 2015. Beginning at that time, and continuing through the events giving rise to this action, Mr. Doe paid tuition to attend the University.

## THE INCIDENT

11.     June Roe ("Ms. Roe") falsely accused Mr. Doe of sexually assaulting her in the late evening of February 11, 2017.

12.     Mr. Doe and Ms. Roe met each other on their first night at Virginia Tech as freshmen and had several consensual sexual encounters during the early weeks of their first semester.

13.     Mr. Doe and Ms. Roe were both members of the VT Snow Club and would see each other regularly at and after Snow Club meetings.

14.     The Snow Club hold several annual events at Snowshoe Mountain, WV; attending members of the Snow Club rent and share houses.

15.     On the weekend of February 11, 2017, both Mr. Doe and Ms. Roe participated in an overnight skiing and snowboarding event at Snowshoe Mountain coordinated by the Virginia Tech Snow Club.

16.     Mr. Doe and Ms. Roe shared the same bedroom along with several other friends in a rented house during the weekend.

17.     Mr. Doe spent most of February 11, 2017 snowboarding with Ms. Roe, Female Witness No. 1 and Male Witness No. 2.

18.     Both Mr. Doe and Ms. Roe drank alcoholic beverages over the course of the day.

19.     When asked later, neither Mr. Doe nor Ms. Roe could state with certainty how much alcohol they consumed.

20. Upon returning to the rental house, Mr. Doe and Male Witness No. 2 helped Ms. Roe take off her snow gear and Ms. Roe got into bed and went to sleep.

21. Female Witness No. 1 and Male Witness No. 2 left to dine out. Mr. Doe stayed behind, as he had brought his own food.

22. Approximately twenty minutes later, Ms. Roe woke up and asked Mr. Doe to make her some food. Mr. Doe brought the food to Ms. Roe in the bedroom; she ate a few bites and then went back to sleep for about fifteen minutes.

23. Mr. Doe ate his food while sitting on the same bed as Ms. Roe as there was no other place to sit in the room.

24. During this time, there were two other people asleep in another bed in the room.

25. Ms. Roe woke up and began talking with Mr. Doe and then started kissing him and pressing herself against him.

26. Ms. Roe then asked Mr. Doe to cuddle with her in the bed and placed Mr. Doe's hand down her pants and on her genitals.

27. Mr. Doe then digitally penetrated Ms. Roe at her request and encouragement.

28. Ms. Roe asked Mr. Doe to engage in vaginal intercourse which he refused.

29. The other people in the room had no recollection of an assault or disturbance on the evening of February 11, 2017.

30. At that time, Female Witness No. 1 and Male Witness No. 2 returned from picking up food; Mr. Doe, Ms. Roe, Female Witness No. 1, and Male Witness No. 2

5

then left separately to attend different parties. Mr. Doe did not see Ms. Roe again that night.

31.     The next morning, Mr. Doe did not see Ms. Roe.

## THE INVESTIGATION

### I.      Title IX Investigation

32.     On March 14, 2017, Mr. Doe was informed by letter from Defendant Katie Reardon Polidoro ("Polidoro"), Title IX Investigator & Gender-Based Violence Prevention Specialist, that the Office of the Senior Associate Vice President for Student Affairs had received information alleging his involvement in an incident that resulted in a report to Defendant Frank Shushok, the Interim Title IX Coordinator. The letter did not identify the date or location of the alleged incident, or the alleged policy violations. The letter informed Mr. Doe that he was to have no further contact with Ms. Roe.

33.     Notably, McCrery worked collaboratively with the Women's Center during the relevant timeframe to reorganize and centralize the work of the Sexual Violence Prevention Council with a goal of implementing new gender-based violence prevention messages and campaigns, including an initiative on "healthy masculinity."

34.     Defendant Shushok was responsible for overseeing OEA during Doe's case. He has publicly demonstrated his bias against males accused of sexual misconduct on social media. For instance:

6

(i)      He has posted to Twitter, "How do we reduce the horrifying amount of
         sexual violence in this country? We talk to our boys";

(ii)     He also posted on Twitter: "We don't talk nearly enough about the
         impact of drinking on boys…They become less able to read social cues,
         less likely to respect 'no' and more likely to use alcohol as an excuse to
         engage in misconduct";

(iii)    He advertised a screening of the movie The Hunting Ground at
         Virginia Tech, which has been described as a "shockingly biased
         exercise in extremist propaganda intent on further chipping away the
         rights of presumptively innocent college men."

(iv)     Cited to an article from the Washington Post about the suspension of a
         fraternity at the University of Richmond and quoted "Tonight's the
         type of night that makes fathers afraid to send their daughters away";

(v)      Cited on Twitter to the debunked statistic that one in five college aged
         women will be sexually assaulted;

(vi)     Has been quoted as saying "when [sexual violence is] reported, we will
         do everything within our power to care for and protect the **people who
         report it."** (emphasis supplied)

         https://vtnews.vt.edu/articles/2016/01/012116-dsa-titleix.html; and

(vii)    "I believe there's significant cultural messaging that reinforces notions
         about what it means to be a man and what it means to be a woman. I

think it plays into the kinds of incidents we have and behaviors we

see." https://vtnews.vt.edu/articles/2016/01/012116-dsa-titleix.html

35.    The University's Division of Student Affairs conducted an investigation into
an allegation that Mr. Doe assaulted Ms. Roe. Specifically, whether Mr. Doe
digitally penetrated Ms. Roe without her consent.

36.    The investigation, which was conducted by Defendant Polidoro, lasted
approximately one month. Over the course of the investigation, Defendant Polidoro
interviewed eight witnesses, including Mr. Doe and Ms. Roe about the incident.

37.    In her statement to Polidoro, Ms. Roe stated that she "had the most vague
image of being in the same room with [Mr. Doe] and although I remember zero
details of [the incident] still, I remember having an eerie feeling about it." She later
told Defendant Polidoro that she did not immediately remember the eerie feeling
but that it was "triggered" the next morning when she talked to Female Witness No.
1.

## II. Student Conduct Hearing

38.    Following the investigation, Mr. Doe was notified on May 8, 2017 that the
University wanted to set a conduct hearing for May 12, 2017, only four days later,
and almost immediately after Mr. Doe's final exams, which concluded on May 10,
2017. Consequently, he had an inadequate opportunity to prepare for the hearing.

39.    On May 10, 2017, Mr. Doe was notified by the University that the conduct
hearing would be re-scheduled for May 15, 2017.

40.    Both Mr. Doe and Ms. Roe were present at the hearing on May 15, 2017. Ms. Roe was present via Skype, while Mr. Doe, along with hearing officers Defendant Ennis McCrery ("McCrery") and Defendant Aaron Reistad ("Reistad"), Mr. Doe's mother, Ms. Roe's advocate Katie Mey, and Defendant Polidoro were present in person.

41.    During the hearing, Polidoro outlined the steps taken during her investigation. Ms. Roe and Mr. Doe were then allowed to ask Polidoro questions pertaining to the investigation. The questions had to be posed to Defendants McCrery and Reistad who would then rephrase the question to Defendant Polidoro. The questions could only be asked for clarification purposes and could not be asked to prove a point or address a discrepancy.

42.    In her explanation of the investigation, Defendant Polidoro stated that she reached out to Witness No. 3, a witness for Mr. Doe, but did not receive a response from him.

43.    Next, Ms. Roe and Mr. Doe were given the opportunity to ask each other questions, through Defendants McCrery and Reistad. Again, these questions had to be for clarification purposes only.

44.    Ms. Roe asserted that she was unable to remember any of the events of February 11, 2017; due to the rules limiting cross examination, Mr. Doe was unable confront Ms. Roe regarding her level of intoxication. Indeed, Ms. McCrery dissuaded him from asking any questions of Ms. Roe, because of her lack of any memory of the encounter.

9

45. Further, Mr. Doe was not given the opportunity to question Female Witness No. 1 or any other witness.

46. At the conclusion of the hearing, which lasted approximately four and a half hours, Mr. Doe and Ms. Roe were informed that they would be receiving a decision within the next few days.

The hearing officers used a preponderance of the evidence standard even though the offenses were quasi-criminal in nature, which should have required, at least, a clear and convincing evidence standard for the burden of proof.

### III. Decision & Sanctions

47. On May 16, 2017, Mr. Doe received a letter from Student Conduct, signed by Defendants McCrery and Reistad, informing him that he had been found responsible for three violations of the Code.

48. Mr. Doe was found responsible for violating the Sexual Violence – Rape, Sexual Violence – Sexual Assault, and Alcoholic Beverage policies of the Code. This finding was based on their conclusion that Mr. Doe had digitally penetrated Ms. Roe without her consent, even though Ms. Roe admitted to having no memory of the event and Mr. Doe explained that the act was initiated by Ms. Roe. There was no evidence to the contrary.

49. As a result of these findings, Mr. Doe was suspended from the University until the fall semester of 2019.

50. The notice also included information regarding the appeals process.

51. The decision is not final until the appeal is decided.

## IV. Appeal of the Sanction

52.     The appeal process at Virginia Tech has different procedures in Title IX cases than the process for other student conduct cases. In regular student conduct cases, only an accused student can appeal. In Title IX cases, both the accused and the accuser can appeal. Virginia Tech officials are more likely to carefully consider an appeal from a female appellant than a male appellant. In fact, it is very rare for the University to overturn findings of responsibility against male students accused of sexual misconduct, even when the evidence in favor of the male student is clear (as it was in this case).

53.     According to the University's policy, a student may only appeal a decision based on a violation of a procedural guarantee, significant and relevant new information, and/or unduly harsh and/or arbitrary sanction(s).

54.     Per the Virginia Tech policy, on May 24, 2017 Mr. Doe appealed the finding of responsibility and the sanction on all three grounds.

55.     In his appeal Mr. Doe emphasized the numerous due process violations that occurred during the investigation and at the hearing; for instance: (i) the Investigator mischaracterized witness testimony in a manner that prejudiced Doe; (ii) relied on hearsay statements as corroboration for Roe's claims rather than Doe's personal knowledge concerning the alleged incident; (iii) omitted material information from the investigation report concerning Roe's purported level of intoxication and recollection of events; (iv) deprived Doe of an opportunity to cross-examine his accuser and her witnesses; (v) deprived Doe of sufficient time to

prepare for the hearing, which occurred during final exam week; and (vi) discouraged Doe from bringing an attorney to the hearing.

56.     He also provided new evidence to further clear his name, as he learned that the treatment he was undergoing for a medical condition potentially impacted his decision-making abilities. In addition, he argued that the sanction was unduly harsh in comparison to similar complaints heard by the Student Conduct Council.

57.     On June 14, 2017, Mr. Doe received a letter from Defendant Frances B. Keene, Interim Director, Housing and Resident Life Chief of Operations and Deputy to the Senior Associate Vice President for Student Affairs, informing him that there was insufficient cause to reverse the decision made by the hearing officers and that the sanction imposed was "in line with the severity of the student conduct code violation of sexual violence – rape." His appeal was denied.

58.     Keene's finding was the final decision in the matter.

59.     In the summer of 2018, the University decided to punish Mr. Doe again. They had not previously noted his sanction on his student transcript. But in the summer of 2018, the University amended his transcript to note his sanction, making it almost impossible for him to complete his degree at a different institution.

## COUNT I – VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983

60.     Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

61. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of the law."

62. Virginia students at public post-secondary schools, like Virginia Tech, have a liberty and property interest in their educations, which is protected by the Fourteenth Amendment's Procedural Due Process Clause.

63. Doe has a constitutionally protected liberty interest in his good name, reputation, honor, and integrity.

64. It is well established that a suspension or expulsion from a public university on charges of misconduct implicates a protected liberty interest under the Fourteenth Amendment. Consequently, a student cannot be arbitrarily or capriciously separated from the university without due process.

65. Here, Doe was suspended from a public institution when he was wrongly held responsible for sexual misconduct.

66. Mr. Doe has sustained damages to his reputation as a result of the finding; this stigmatizing label will impair his ability to seek further education or employment elsewhere.

67. Mr. Doe also has a constitutionally protected property interest in his continued enrollment at Virginia Tech, including the various educational programs it supports, which is based on the language of its policies relating to student discipline and the procedures that must be employed before a student is separated from the university.

68. Further, Mr. Doe understood and expected that Virginia Tech would only suspend a student after a finding for cause and after a "prompt, adequate, reliable, and impartial Title IX investigation" as noted in Virginia Tech's Sexual Harassment and Sexual Violence Investigation Procedures policy in effect during the relevant timeframe.

69. Because of Mr. Doe's various liberty and property interests protected by the Procedural Due Process Clause of the Fourteenth Amendment, Virginia Tech was obligated to provide him with a fundamentally fair and unbiased disciplinary process before punishing him for alleged misconduct.

70. At a minimum, Virginia Tech was required to afford him proper notice of the allegations against him and a meaningful opportunity to be heard and to defend himself.

71. Mr. Doe was also entitled to process commensurate with the seriousness of the allegations and the potential discipline and sanctions he faced.

72. Plaintiff was entitled to a fundamentally fair procedure to determine whether he was responsible for the alleged misconduct, which Virginia Tech failed to provide.

73. The University deprived Mr. Doe of his fundamental due process rights when, for instance, (i) the Investigator mischaracterized witness testimony in a manner that prejudiced Doe; (ii) relied on hearsay statements as corroboration for Roe's claims rather than Doe's personal knowledge concerning the alleged incident; (iii) omitted material information from the investigation report concerning Roe's

purported level of intoxication and recollection of events; (iv) deprived Doe of an opportunity to cross-examine his accuser and her witnesses; (v) deprived Doe of sufficient time to prepare for the hearing, which occurred during final exam week; and (vi) discouraged Doe from bringing an attorney to the hearing.

74.     The appeal process also did not give Doe a meaningful opportunity to challenge the finding of responsibility and clear his name. Specifically, (i) the arguments raised in his appeal were dismissed without due consideration, (ii) he was limited in the grounds upon which he could appeal, which did not include an opportunity to challenge the findings, and (iii) Shushok's various roles created a conflict of interest when he was not only responsible for overseeing the entire process, but also referred the case to a hearing for resolution initially, received Doe's appeal, and appointed the appellate officer to hear the matter, all of which contributed to an appeal process that lacked adequate due process.

75.     Mr. Doe was banned from campus and unable to attend classes as a result of the biased and unjust investigation process, unfairly delaying his education.

76.     The University used an improper standard of proof due to the quasi-criminal nature of the offenses. The standard should have been clear and convincing evidence, at least.

77.     The finding of responsibility and suspension will taint Mr. Doe's student record, which will follow him throughout any other educational or employment opportunities.

78.     The notation of the sanction on his student transcript will further severely limit his ability to find academic or career success. It will cause other educational institutions and many employers to reject him because of the wrongful disciplinary action.

79.     As a result of these due process violations, Mr. Doe was suspended until the fall 2019 semester and suffers ongoing harm to his reputation and numerous damages. He was unable to enroll in classes at Virginia Tech, was significantly obstructed in finding an alternate route to education, and is marred by an erroneous record on his transcript that will negatively affect future educational and employment opportunities.

80.     When Mr. Doe was able to find another school that would admit him, it was a school in a distant state with an academic reputation that was substantially inferior to Virginia Tech, which will also negatively affect future educational and employment opportunities.

81.     Further, Mr. Doe incurred costs in relocation, applications to other universities around the country, costs for educational admissions consultants, increased tuition costs, and increased costs for travel between Mr. Doe's new school and his home.

    WHEREFORE, plaintiff Joseph Doe prays judgment as hereinafter set forth.

## COUNT II – VIOLATION OF THE DUE PROCESS CLAUSE OF THE VIRGINIA CONSTITUTION

82.     Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

83.    The Virginia Constitution states that "no person shall be deprived of his life, liberty, or property interests without due process of law." Va. Const. art. I, § 11.

84.    For the reasons stated under Count I, the University deprived Mr. Doe of various liberty and property interests without due process of law.

85.    Accordingly, all Defendants are liable to Mr. Doe for violations of the Virginia Constitution and Defendants Polidoro, McCrery and Reistad are, liable in their personal capacities, for all damages arising out of those violations.

## COUNT III – VIOLATION OF TITLE IX (20 U.S.C. § 1681 *et seq.*)

86.    Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

87.    Virginia Tech receives federal funding, including in the form of federal student loans given to students and is subject to the provisions of Title IX.

88.    Title IX prohibits gender discrimination in the educational setting.

89.    Virginia Tech erroneously found Mr. Doe responsible for sexual assault. Indeed, he is innocent of the allegation.

90.    Defendant Polidoro was motivated by a gender bias when she disregarded Mr. Doe's statements, failed to investigate evidence that would have exculpated him of the alleged offenses, and gave preference to the implausible and inconsistent statements of Ms. Roe.

91.    Virginia Tech was put on notice that Roe initiated sexual activity with Doe without his consent, yet it failed to take any action with respect to Doe's allegations and failed to pursue an investigation against Roe for her misconduct.

92.    Specifically, Doe articulated that Roe initiated making out with him, started to grind on his penis while they were in bed, took his hand and placed it inside her pants and on her vagina, and took his wrists and placed them into her pants on her vagina. He also explained that she did not ask for Doe's consent before engaging in any of this conduct.

93.    Yet, at no time was Roe investigated for potential policy violations related to the above conduct, demonstrating a clear bias in favor of the female complainant and against the male accused.

94.    Further, Defendant Polidoro also gave no weight to the apparent mutual intoxication of both Mr. Doe and Ms. Roe at the time of the alleged incident, Ms. Roe's memory loss, and the inconsistencies between Mr. Doe and Ms. Roe's recollections of the alleged incident, instead choosing to treat Ms. Roe's account as wholly accurate and reliable.

95.    The serious and deliberate procedural shortcomings in the investigation and adjudication of the allegations against Mr. Doe prevented him from fully defending himself.

96.    Moreover, Virginia Tech initiated its investigation in the shadow of (1) several Office of Civil Rights ("OCR") investigations into how colleges and universities handle allegations of sexual assault; and, (2) innumerable reports covered in the national media that suggest the pervasive nature of sexual assault committed by male students on college campuses throughout the nation. As a reaction to the scrutiny of these OCR investigations and national stories, and in

order to be perceived as aggressively addressing the perceptions that sexual assault against female students is rampant on college and university campuses, Virginia Tech treats male students accused of sexual misconduct by female students more aggressively than it otherwise would, and more aggressively than it would treat similar complaints made by male students against female students.

97.   Virginia Tech has engaged in a pattern of unfair investigations and adjudications resulting in serious sanctions being imposed on male students, while not making comparable efforts with respect to allegations of sexual violence and abusive conduct made against female students.

98.   The appeal process for Title IX cases disproportionately and negatively affects male students. Appeals from male students are almost certain to fail. The appeal process itself favors female students because complainants in Title IX cases (who are overwhelmingly female) are given the right to appeal adverse decisions, unlike complainants in non-Title IX cases, subjecting male respondents to double jeopardy.

99.   The University favors female complainants over male complainants. If a male makes a Title IX complaint against a female, University officials are more likely to ignore the complaint and not even bring it forward to a hearing than if the complaint was brought by a similarly situated male.

100.   Defendant Shushok has demonstrated his bias against males accused of sexual assault, as previously explained.

101. Shushok had the responsibility to ensure that a fair and equitable appeals process was carried out, and had the authority to take any action necessary to ensure a correct outcome.

102. Notwithstanding, he failed to intervene and instead, allowed the incorrect finding and sanction of suspension to stand.

103. Here, the decision erroneously finding Mr. Doe responsible for the alleged sexual misconduct was motivated by gender bias against accused male students.

WHEREFORE, plaintiff Joseph Doe prays judgement as hereinafter set forth.

## COUNT IV – BREACH OF CONTRACT

104. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

105. Mr. Doe paid the University sums of money for his education, and in return, the University contracted to provide Mr. Doe with access to its undergraduate degree program.

106. Mr. Doe's enrollment in, and attendance of, classes at Virginia Tech created in Mr. Doe an expectation that he would be allowed to continue his course of study until he earned his degree from the University, provided that he maintained satisfactory grades and complied with University rules and polices.

107. Accordingly, an implied contractual relationship exists between Mr. Doe and Defendant Virginia Tech, under which each party owes the other certain duties.

108. Under the implied contract between Mr. Doe and Defendant Virginia Tech, Defendant Virginia Tech has a duty not to suspend or expel Mr. Doe for disciplinary

misconduct arbitrarily, capriciously, maliciously, discriminatorily, or otherwise in bad faith.

109.    Defendant Virginia Tech breached these contractual obligations by suspending Mr. Doe for sexual misconduct through an investigative and adjudicative process that—in the ways, and for the reasons, set out above—was arbitrary, capricious, malicious, discriminatory, and conducted in bad faith.

110.    As a direct and proximate result of this breach, an erroneous finding that Mr. Mr. Doe committed sexual assault has been made part of Mr. Doe's educational records, which may be released to educational institutions and employers to whom Mr. Doe applies, substantially limiting his ability to gain acceptance to graduate school, or to secure future employment.

111.    Accordingly, Defendant Virginia Tech is liable to Mr. Doe for breach of contract and for all damages arising therefrom.

        WHEREFORE, plaintiff Joseph Doe prays judgment as hereinafter set forth.

## COUNT V – DECLARATORY JUDGMENT

112.    Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

113.    Defendant Virginia Tech violated Mr. Doe's due process rights when it conducted a biased investigation, disregarded Mr. Doe's witnesses and evidence, and allowed Ms. Roe's information and allegations, which were refutable, to go virtually uninvestigated.

WHEREFORE, plaintiff Joseph Doe prays that judgement be entered in his favor for:

(1) compensatory and punitive damages in an amount to be determined at trial;

(2) a permanent injunction (a) restraining Virginia Tech, and all those acting in consort with Virginia Tech, from continuing to enforce any punishment against him and from making any notation on his transcript or keeping any record relating to his disciplinary hearing in Mr. Doe's education records, and (b) ordering that Virginia Tech rescind and expunge the sanctions entered against him by Virginia Tech;

(3) a declaration that (a) the University violated Mr. Doe's due process rights and its actions were motivated purely by gender, and (b) Mr. Doe was unjustly sanctioned by Virginia Tech; and

(4) costs, including attorneys' fees under Title IX and 42 U.S.C. § 1988, and such further relief as is just and equitable.

DATED: September 12, 2019

Respectfully submitted,

By: /s/ Jesse R Binnall
Harvey & Binnall, PLLC
Jesse R. Binnall
717 King Street, Suite 300
Alexandria, VA 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
Email: jbinnall@harveybinnall.com

Nesenoff & Miltenberg LLP
Andrew T. Miltenberg
Tara Davis
363 Seventh Avenue, 5th Floor
New York, NY 10001-3904
Telephone: (212) 736-4500
Facsimile: (212) 736-2260
Email: amiltenberg@nmllplaw.com
        tdavis@nmllplaw.com
*Pro hac vice*

*Counsel for Plaintiff*